867 So.2d 723 (2003)
MOTOROLA, INC.
v.
ASSOCIATED INDEMNITY CORPORATION, Continental Casualty Company, National Surety Company, Transportation Insurance Company, and Zurich Insurance Company
No. 2002 CA 1351.
Court of Appeal of Louisiana, First Circuit.
October 22, 2003.
*724 S. Gene Fendler, Harold J. Flanagan, New Orleans, J.W. Montgomery, III, Pittsburgh, PA, Counsel for Plaintiff/Appellant Motorola, Inc.
Michael Durand, Lafayette, Counsel for Defendants/Appellees Associated Indemnity Corporation and National Surety Corporation.
Philip R. King, Chicago, IL, Counsel for Defendant/Appellee Zurich American Insurance Company.
David P. Salley, New Orleans, Counsel for Defendant/Appellee Continental Casualty Company.
William J. Mitchell, II, Baton Rouge, Counsel for Defendant/Appellee Hartford Insurance Company.
Robert A. Vosbein, William J. Kelly, III, New Orleans, Counsel for Defendants/Appellees Continental Casualty Company and Transportation Insurance Company.
Edward A. Rodrigue, Jr., New Orleans, Counsel for Defendant/Appellee St. Paul Surplus Lines Insurance Company.
Eavelyn T. Brooks, New Orleans, Counsel for Defendants/Appellees National Union Fire Insurance Company of Pittsburg, Pennsylvania and Illinois National Insurance Company.
Before: CARTER, C.J., FOIL, WHIPPLE, PARRO, FITZSIMMONS, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, & McCLENDON, JJ.
CARTER, C.J.
Motorola, Inc., was originally sued in various class actions and in two individual lawsuits. Motorola filed this action for declaratory judgment and breach of contract on August 11, 2000, against ten of its primary and excess liability insurers, seeking a determination that their policies provide coverage for the claims in the underlying actions, that they have the duty to defend Motorola for those claims, and that they are liable for damages to Motorola for their failure to defend it in the underlying actions. In addition to denying liability in their answers, Associated Indemnity Company, Hartford Insurance Company, and other insurers asserted reconventional demands for declaratory judgments that they have no obligation to either defend or indemnify Motorola in the underlying class actions.
Cross motions for summary judgment were filed by Motorola and its alleged insurers regarding insurance coverage and the duty to defend Motorola in those suits. The trial court denied Motorola's motion, but granted the motions of Associated and Hartford, dismissing Motorola's claims against those insurers. The trial court also granted partial summary judgment in favor of Continental Casualty Company on certain issues, although it remains a defendant as to the unresolved issues. Motorola appeals.
Because of the importance of consistency in the application of Louisiana Code of Civil Procedure article 1915 in determining the appealability of partial judgments, and with the consent of the parties, we review this procedural issue en banc, as we did in *725 a prior opinion in the connected appeal, Motorola, Inc. v. Associated Indem. Corp., 02-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715 (Motorola I). Since we are addressing only the procedural issue involved herein, the original three-judge4 panel to which this appeal was assigned will decide the merits of the appeal, if it is maintained.

FACTUAL AND PROCEDURAL BACKGROUND
Motorola is a manufacturer of cellular wireless handheld telephones (cell phones). Class-action plaintiffs in a number of suits seek damages from Motorola and numerous other cell phone manufacturers and distributors to either prevent or alleviate customers' allegedly harmful exposure to radio frequency radiation.[1] Motorola is also a defendant in two individual lawsuits that seek damages for brain cancers allegedly caused by Motorola's products.[2]
In this declaratory judgment action by Motorola, on November 28, 2001, the trial court granted the motion for summary judgment of Zurich American Insurance Company, ruling that its policy did not afford coverage to Motorola for the claims asserted in the underlying class actions and that it owed no duty of defense. In the same judgment, the court denied Motorola's motion for summary judgment on the same issues.[3] At a subsequent hearing on March 27, 2002, the trial court also granted summary judgment in favor of the other moving insurers and denied Motorola's motions on the same issues. The summary judgments dismissed Associated and Hartford as party defendants in this declaratory judgment action. As to Continental, the summary judgment granted it partial relief as to its duties for all of the underlying class actions, but not those relating to the underlying individual actions, as to which it did not seek such relief. Thus, as to Continental, the partial summary judgment did not grant complete relief as to all issues joined between it and Motorola.

DISCUSSION
Appellate courts have the duty to examine their subject matter jurisdiction sua sponte, even when the parties do not raise the issue. McGehee v. City/Parish of East Baton Rouge, 00-1058 (La.App. 1 Cir. 9/12/01), 809 So.2d 258, 260. A final judgment of the trial court can be appealed. LSA-C.C.P. art.2083. A judgment that determines the merits in whole or in part is a final judgment. LSA-C.C.P. art. 1841. Whether a partial judgment is appealable *726 is determined by examining the requirements of Code of Civil Procedure article 1915. Once again, as in Motorola I, it is appropriate for us to examine the basis for our jurisdiction before addressing the merits of this appeal.
The judgments before us are summary judgments rendered in an action for declaratory judgment.[4] Louisiana Code of Civil Procedure article 1915 authorizes the immediate appeal of partial final judgments, including partial summary judgments. It provides, in pertinent part:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
....
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).[5]
....
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. [Our emphasis; footnote added.]
In its judgment, the trial court designated[6] the partial summary judgments in favor of the insurers as partial final judgments pursuant to article 1915B.
As between Motorola and the insurers, Associated and Hartford, the issue for determination is identical to that presented in Motorola I. No factors warrant a different resolution. We therefore conclude, *727 for the same reasons set forth in Motorola I, that the judgments against those insurers are partial final judgments under both paragraphs A(1) and A(3) of article 1915, immediately appealable without need for the trial court's designation. Accordingly, we maintain those judgments for appeal.
What is more difficult, however, is the trial court's designation as final of the summary judgment in favor of Continental. That judgment clearly falls within the ambit of article 1915B, and despite the clear designation of the summary judgment as final and appealable by the trial court, the reasoning upon which it based that designation is unstated. We will therefore address what constitutes proper designation of a partial judgment for purposes of appeal under Louisiana law.

LEGAL BACKGROUND
The Initial Optimism
When the Louisiana Code of Civil Procedure was adopted in 1960,[7] commentators expressed great hope that the new codal provisions on judgments would greatly reduce future procedural problems. The redactors had "not only borrowed thoroughly-tested rules from other jurisdictions, but they also employed unambiguous language and exhaustive comments to minimize any confusion relative to still unlitigated matters." Jack Brook, Symposium on Civil Procedure, Rendition of Judgements, 21 La.L.Rev. 168, 235 (1960). New article 1915 was hailed as one of the best examples of these new rules. No more would parties with easily proven claims be forced "to endure the hardship of awaiting final disposition of all claims." Id. at 232.
Unfortunately, the redactors' optimism was misplaced. The "thoroughly-tested rule" that they borrowed for article 1915 was Federal Rule of Civil Procedure 54(b). The Louisiana legislature did not adopt Rule 54(b) in its entirety, however, and over the years Louisiana's jurisprudential interpretation of article 1915 has diverged somewhat from the federal courts' interpretation of Rule 54(b). The legislature amended article 1915 in 1983, 1992, 1997, 1999, and 2001, and the result has been a procedural morass.
The issue before the en banc court today is the interpretation of article 1915B's language "an express determination that there is no just reason for delay." We must determine whether such express determination requires the trial court to give specific reasons for designating a partial judgment as final. When the legislature amended article 1915B in 1997, it took the "express determination" language verbatim from Rule 54(b). Because that language has remained unchanged since 1997, despite the multitudinous amendments to article 1915B, we shall begin our analysis by surveying the federal jurisprudence interpreting that language. See Scott v. Hospital Serv. District No. 1, 496 So.2d 270, 273 (La.1986); Carter v. BRMAP, 591 So.2d 1184, 1189 (La.App. 1 Cir.1991).
The Federal Courts' Views
Federal Rule of Civil Procedure 54(b) provides, in pertinent part, that when "more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." (Our emphasis.)
Whether an express determination requires written reasons has been litigated many times by the United States courts of *728 appeals. Of the thirteen federal circuits, only the Sixth Circuit has held that written reasons are always required. In the Sixth Circuit, the trial court "must clearly explain why it has concluded that immediate review of the challenged ruling is desirable." General Acquisition, Inc. v. Gen Corp, Inc., 23 F.3d 1022, 1026 (6 Cir.1994). If it fails to do so, the case is dismissed for lack of jurisdiction. See Daleure v. Kentucky, 269 F.3d 540 (6 Cir.2001); Justice v. Pendleton Place Apartments, 40 F.3d 139, 140-141 (6 Cir.1994).
The other twelve circuits apply the prevailing rule set forth by the Seventh Circuit in Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944 (7 Cir.1980), wherein the court held written reasons were not necessary.[8] After noting that a statement articulating the considerations underlying the trial court's designation under Rule 54(b) was the "better practice," it stated:
The statement is, however, primarily an aid to the appellate court to permit it to review the exercise of the trial court's discretion. The failure of the district court to make a written statement at the time it makes a 54(b) certification is not a jurisdictional defect, ... and need not occasion even a remand if the basis for the district court's determination is otherwise apparent.
Bank of Lincolnwood, 622 F.2d at 948-949 (footnote omitted).
Louisiana Courts' Approaches
Before its 1997 amendment, article 1915 dealt with the problem of identifying immediately *729 appealable partial judgments by setting forth exclusive classes of partial judgments that were immediately appealable. In 1997 the Louisiana legislature amended article 1915B to permit the appeal of certain partial judgments after designation as final by the trial courts.[9] Conflicts soon arose between the state appellate circuits regarding the proper procedure for such appeals.
One of the first decisions on this procedure was Banks v. State Farm Ins. Co., 30,868 (La.App. 2 Cir. 3/5/98), 708 So.2d 523, 525, in which the Second Circuit, sitting en banc, held that partial judgments should be designated as final only after a case-by-case consideration of the judicial administrative interests and equities involved. The court set forth criteria for determining appealability patterned after the federal jurisprudence. The court further found that the code required an express determination that could not be satisfied by inferences from the trial court's order.
The Fourth Circuit issued inconsistent opinions on this issue. In Johns v. Jaramillo, 98-2507 (La.App. 4 Cir. 11/25/98), 724 So.2d 255, 257, the court followed Banks, holding that "a proper certification requires specific written reasons for the trial court's determination that an immediate appeal is warranted." Two weeks later, however, in In re Succession of Toncrey, 98-2342 (La.App. 4 Cir. 12/9/98), 725 So.2d 59, 60-61, the court stated that it disagreed with Banks.
The Fourth Circuit continued to treat these appeals inconsistently until sitting en banc in Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060.[10] In Jackson the court found that "the legislature intended to require that some reason be expressed for the determination that there is no just reason for delay, because Article 1915(B)(1) provides that the designation must be pursuant to `an express determination[,'] and clearly contemplates that more than a mere conclusory statement will be given as a justification for finality." Id. at 1065. The court held that article 1915B requires "a clear and concise statement of why there is no just reason for delay" from the trial court, and that, in the absence of such, it would not certify the judgment at the appellate level, nor would it convert the appeal to a writ application. Id. at 1066.[11]
The Fifth Circuit in Berman v. De Chazal, 98-0081 (La.App. 5 Cir. 5/27/98), 717 So.2d 658, 660-661, reached a middle ground similar to the prevailing view in the federal courts. While agreeing that Banks generally set forth the correct criteria to consider in determining whether a judgment was properly designated as final, the court did not follow Banks's holding that written reasons by the trial court were a requisite for appellate jurisdiction. Instead, the court held that *730 the presence or absence of reasons affects only the standard of review. If reasons are given, the court applies the abuse-of-discretion standard in reviewing whether the judgment was properly designated as final. If no reasons are given, the court conducts a de novo review of the designation. Id. at 661. The Third Circuit adopted the Berman approach for "purposes of judicial efficiency and economy" in Flatland Real Estate Co. v. Dugas Constr., 00-1794 (La.App. 3 Cir. 5/9/01), 784 So.2d 867, 870.
The First Circuit's 1915B History
Our own circuit originally dealt with the 1915B designation problem by adopting an internal policy. In 1999 we decided that if a partial judgment was appealed without trial court designation, the appellant would be given the opportunity to supplement the record with such designation. No special form of designation was required. From 1999 through 2001, this court did not address the decisions of the Second and Fourth Circuits regarding written reasons for designation as final. If the reasons were apparent, as they often are, this court merely noted that the trial court had designated the judgment as final.[12]
In 2000 this court began looking more closely at the trial courts' designations. We conducted a de novo review of a trial court's designation of a judgment as final, determined the trial court erred in so designating the judgment, and dismissed the appeal for lack of jurisdiction in Doyle v. Mitsubishi Motor Sales, 99-0459 (La. App. 1 Cir. 3/31/00), 764 So.2d 1041, 1047-1048, writ denied, 00-1265 (La.6/16/00), 765 So.2d 338. We did the same in Van ex rel. White v. Davis, 00-0206 (La.App. 1 Cir. 2/16/01), 808 So.2d 478. In White, we adopted the standard of review set forth by the Fifth Circuit in Berman and followed by the Third Circuit in Flatland, i.e., abuse of discretion if the trial court gave reasons, de novo if no reasons were given. White, 808 So.2d at 484.
In 2002, however, this court used dicta indicating the standard might be changing. In Boudreaux v. Audubon Ins. Co., 01-2061 (La.App. 1 Cir. 10/16/02), 835 So.2d 681, the trial court designated the judgment as final but neither stated there was no just reason for delay nor explained why there was no reason for delay. This court held that "in the absence of a designation of the judgment as final through an express determinationi.e., a meaningful and considered articulation by the trial courtof no just reason for delay, a jurisdictional defect exists." Id. at 684. In Shapiro v. L & L Fetter, Inc., 02-0933 (La.App. 1 Cir. 2/14/03), 845 So.2d 406, 410, citing a Fourth Circuit case,[13] we stated that "[v]alid certification of a partial judgment as final requires that the trial court give explicit reasons on the record as to why there is no just reason *731 for delay; mere conclusory statements do not suffice." We did not adopt the Fourth Circuit's no-reasons, no-jurisdiction rule, however. Instead, we cited Berman and conducted a de novo review of the propriety of designation.
The Commentators' Advice to the Legislature
Commentators discussing article 1915's pre-1999 designation requirements observed that "it is of paramount importance that a trial court judge fully understand and carefully perform the role of `dispatcher,' rather than routinely certifying partial judgments." Mark Tatum & William Norris, III, Comment, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La.L.Rev. 131, 169 (1998). The same commentators obviously recognized that article 1915B did not require that the trial court give written reasons but opined that they "should give written reasons for certification to facilitate appellate review." (Bold added.) Tatum and Norris explained:
Certainly, when a district court gives written reasons for certification, there can be no doubt that certification was intended, and written reasons often will be very helpful, if not essential for an appellate court to perform its duty of reviewing the propriety of certification. Thus, if a Louisiana appellate court has any doubt whatsoever about whether certification was intended, or about why certification was granted, the court can remand for written reasons for certification, regardless of what language the trial court did or did not use when granting the motion for appeal. If our appellate courts uniformly follow this approach, problems concerning the adequacy of certification should be minimal.
Id. at 164. In their recommendations for legislative changes, the writers suggested that the legislature amend article 1915B to include language requiring that the trial court sign a "certificate expressly stating why an immediate appeal is warranted." Id. at 172.
The Legislature's Response to the Commentators
When the legislature met in 1999, it amended article 1915 to effect significant changes to partial judgments falling within article 1915A. However, it made no changes to the concept of designation of article 1915B judgments, apart from the elimination of designation of finality by consent of the parties.
In Motorola I, we reviewed the legislative history of the 1999 amendments in our effort to confirm the legislative intent of article 1915A, as amended. The minutes of the House Committee on Civil Law and Procedure,[14] quoted in part in our opinion, also contain the following relevant discussion:
Representative McMains explained that the net effect of the changes to Article 1915 would be that a partial final judgment would unquestionably exist whenever a party were dismissed, but as to a partial summary judgment that dismissed an issue or cause of action, the court would be required to certify that it was indeed a partial final judgment.
Representative Wilkerson inquired as to whether the designation by the court would be made within the written judgment. Professor L'Enfant responded that the trial court would have to designate the partial judgment as a final judgment and also declare there is no *732 just reason for delay. Representative Wilkerson reiterated her concern that the designation should be made a part of the written judgment signed by the court.
....
Professor L'Enfant agreed with Representative McMains' statement, that the courts of appeal have taken very seriously the language in Article 1915(B)(1) and have said that, without reasons from the trial court stating why an appealable partial judgment should exist, the appeal courts are prepared to dismiss the appeal as inappropriate. Therefore, the language of the bill is [reinforced] by the opinions of the courts of appeal that have been rendered so far. [Our emphasis.]
Professor L'Enfant's statement was correct in 1999 insofar as the Second and Fourth Circuits were concerned. But considering the jurisprudential history outlined above, it appears he misspoke insofar as the other three circuits were concerned. Whether it was swayed by Professor L'Enfant's testimony or some other reason, the legislature declined to amend article 1915B to require written reasons. The legislature amended article 1915 again in 2001, but it still did not require written reasons as part of the designation process.

CONCLUSION
We agree that a trial court's explication of its designation of a judgment as final is the most desirable practice.[15] We shall not impose this undue labor, however, on already overburdened trial courts in cases where the reasons are obvious.
Moreover, while written or oral reasons are desirable, we do not believe the trial court's failure to give reasons when it designates a judgment as final is a jurisdictional defect. The legislature has had many opportunities to impose this requirement for our jurisdiction but has failed to do so. We shall not usurp the legislature's authority by invoking a self-imposed jurisdictional requirement.
In cases in which the trial court designates a partial judgment as final under article 1915B and the reasons are neither apparent nor provided for us by the trial court, we shall conduct a de novo review. We shall continue to apply the non-exclusive list of factors that all Louisiana appellate circuits have adopted from the federal courts in determining whether a partial judgment is final, i.e.:
(1) The relationship between the adjudicated and unadjudicated claims;
(2) The possibility that the need for review might or might not be mooted by future developments in the district court;
(3) The possibility that the reviewing court might be obliged to consider the same issue a second time;
(4) The presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and
(5) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.[16]
*733 If we determine after conducting a de novo review that the trial court erred in designating the judgment as final, we shall dismiss the appeal.
In cases in which a party appeals a partial judgment without obtaining a designation, we shall continue to employ the internal policy adopted by this court in 1999 of ordering the parties to show cause why the appeal should not be dismissed and permitting supplementation of the record with a proper designation, which we believe promotes judicial economy and efficiency.
Having decided the sole issue before this en banc panel, we leave the de novo review of this particular appeal's designation to the original three-judge panel to which it was assigned.
APPEAL REFERRED TO MERITS PANEL.
GAIDRY, J., concurs with reasons.
KUHN, J., dissents and assigns reasons.
McCLENDON, J., concurs and assigns reasons.
GAIDRY, J., concurs with reasons.
I concur in the result herein, referring this particular appeal to the merits panel for further disposition, but disagree with the majority's interpretation of La. C.C.P. art. 1915(B)'s requirements. I would require the trial court to do what the legislature has already directed it to do"express" its "determination" of the propriety of "designation" of a partial judgment as final and appealable. The reasoning used in the cases discussed below is persuasive on this issue.
Any considered discussion of the requirements of La. C.C.P. art. 1915(B) must begin with F.R.C.P. 54(b), its primary source provision, and the case of Curtiss-Wright Corporation v. General Electric Company, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). In that case, the United States Supreme Court explained the role of the district court in the certification process of Rule 54(b):
Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration." [Citations omitted.]
Curtiss-Wright, 446 U.S. at 8, 100 S.Ct. at 1464-65. By contrast the Court held that "the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466. In fulfilling that role, the federal appellate courts "must, of course, scrutinize the district court's evaluation of such factors" militating for and against immediate appeal. Id. (My emphasis.)[1]
*734 In Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir.1990), a closely divided en banc court held that Federal Rule of Civil Procedure 54(b) did not require that the district court recite verbatim the express litany of "no just reason for delay" in order to properly certify a partial final judgment for appeal. The majority held that if either the language of the judgment alone or in combination with the record reflected an unmistakable intent to certify the judgment, Rule 54(b)'s requirements were satisfied. The Kelly majority acknowledged, however, both the "close vote" of the en banc court in that case (10-7) and the "sharp" division of the federal appellate courts on that issue. Kelly, 908 F.2d at 1220-21 n. 2.[2]
The dissenting opinion in Kelly emphasized the plain meaning of the word "express" as it modified "determination" in Federal Rule of Civil Procedure 54(b), criticizing the majority for apparently declaring "that `express' means the same thing as `implied.'" Kelly, 908 F.2d at 1222 (Smith, dissenting). The dissent pointedly stated that the goal of establishing "certainty, and not merely probability based upon inference and implication, that the district judge has decided to allow a piecemeal appeal" was met by requiring "an explicit statement by the judge that he or she has determined that there is no just reason for delay." Kelly, 908 F.2d at 1223 (Smith, dissenting). Rather than requiring either "the talismanic [seven] words" from the rule or a statement of reasons from the district court, the dissent interpreted Rule 54(b) to require "only a simple, brief recital, verbatim or paraphrased" that the district court found no just reason for delay. Kelly, 908 F.2d at 1228 (Smith, dissenting).[3]
*735 Closer to home, the Louisiana Second Circuit Court of Appeal in Banks v. State Farm Insurance Company, 30,868 (La. App. 2nd Cir.3/5/98), 708 So.2d 523, was presented with the appeal of a partial summary judgment in favor of the plaintiff on the issue of liability alone in a personal injury action. Under the pre-1999 version of La. C.C.P. art. 1915(B), the parties had agreed to the designation of the judgment as final and appealable, but the trial court failed to make an express determination either in the summary judgment or the order of appeal. The appellate court undertook a succinct yet thorough analysis of article 1915 after the 1997 amendments, as well as its source provision, F.R.C.P. 54(b), in order "to guide trial courts in their new roles under Article 1915." Banks, 30,868 at p. 1, 708 So.2d at 524. The court noted that it was clearly "the legislative intent that Louisiana courts follow a certification procedure" akin to that employed by the federal courts. Banks, 30,868 at p. 2, 708 So.2d at 524. The court concluded that despite the language referring to the parties' agreement, it was not the legislative intent to relieve the trial courts of the responsibility to undertake "a determination and designation," and that "partial judgments should be certified only after a case-by-case consideration of the judicial administrative interests and equities involved." Banks, 30,868 at pp. 3-4, 708 So.2d at 525 (emphasis in original). The court cited with approval the case of Allis-Chalmers Corporation v. Philadelphia Electric Company, 521 F.2d 360 (3rd Cir. 1975), for the relevant factors guiding the trial court's consideration for the determination phase. Finally, the Second Circuit held that "[t]rial courts should give written reasons for La. C.C.P. art. 1915(B) certification to facilitate appellate review" and to "satisfy the codal requirement for a trial court's express determination." Id. (Emphasis in original.) Since the trial court in Banks did not provide written reasons, the Second Circuit remanded the case, directing the trial court to do so.
The Fourth Circuit has similarly held that valid certification of a partial judgment as final requires that the trial court give explicit reasons on the record as to why there is no just reason for delay. Jackson v. America's Favorite Chicken Company, 98-0605 (La.App. 4th Cir.2/3/99), 729 So.2d 1060. After summarizing a significant line of its past cases, *736 the court paraphrased the reasoning of another earlier opinion as holding that "the legislature intended to require that some reason be expressed for the determination that there is no just reason for delay, because Article 1915(B)(1) provides that the designation must be pursuant to `an express determination,' and clearly contemplates more than a mere conclusory statement will be given as a justification for finality." Jackson, 98-0605 at p. 9, 729 So.2d at 1065 (bold emphasis in original). The court held that article 1915(B) required "a clear and concise statement of why there is no just reason for delay" from the trial court, and that in the absence of such it would not certify the judgment at the appellate level, nor would it convert the appeal to a writ application. Jackson, 98-0605 at pp. 11-12, 729 So.2d at 1066-67. The opinion was adopted by the Fourth Circuit en banc to fulfill "a need for clarification and consistency." Jackson, 98-0605 at p. 9, 729 So.2d at 1065.[4]
In Shapiro v. L & L Fetter, Inc., 02-0933 (La.App. 1st Cir.2/14/03), 845 So.2d 406, involving a classic case of partial summary judgment under La. C.C.P. 966(E), we held that a requirement of explicit reasons for certification is implicit from the language of La. C.C.P. art. 1915(B). We held that article 1915(B)(1) requires the designation ("certification") be made "after an express determination," and article 1915(B)(2) again refers to a bipartite "determination and designation." Shapiro, 02-0933 at pp. 5-6, 845 So.2d at 410. We further held that unless the pre-certification determination is made and "express," the certification of the partial judgment as "final" is deficient, citing Boudreaux v. Audubon Insurance Company, 01-2061 (La.App. 1st Cir.10/16/02), 835 So.2d 681.
Although the 1999 amendments to La. C.C.P. art.1915 effected significant changes to those partial judgments falling within article 1915(A), no changes to the concept of certification of article 1915(B) judgments were made, apart from the elimination of designation of finality by consent of the parties. I agree with the majority's literal statement that the legislature declined to amend article 1915(B) in 1999 "to require written reasons," but only because its intent in that regard had already been stated, and further amendment would obviously have been redundant.
Appeals are favored in the law, and should not be dismissed unless the reason for doing so is free from doubt. Fraternal Order of Police v. City of New Orleans, 02-1801, pp. 2-4 (La.11/8/02), 831 So.2d 897, 899-900. Here, unlike the situation addressed in the latter case, there is "an explicit expression of legislative will" in La. C.C.P. art.1915's phrase, "express determination." I therefore conclude that the legislative purpose of La. C.C.P. art. 1915 is best effectuated by requiring that an "express determination" for certification incorporate an explanation, analysis, *737 or "statement of reasons" in the record of the trial court proceedings.
In short, this court cannot fulfill its responsibility to scrutinize the trial court's evaluation of the factors supporting certification if that evaluation is not expressed or articulated; we have no crystal ball to divine subjective reasoning, however valid it may be. And we should not assume on our own initiative the trial court's discretionary authority and mantle of "dispatcher," bestowed upon it by the legislature, by performing our own evaluation. The majority here contradicts itself and in effect "usurp[s] the legislature's authority" by ignoring the article's plain language and elevating our internal rule to the status of positive law. The general approach followed by the Second Circuit in Banks, the Fourth Circuit in Jackson, and this court in Boudreaux and Shapiro is the correct and preferable one.
The "determination" process itself, in which the trial court as "dispatcher" or "gatekeeper" weighs those factors militating for and against immediate appeal, is an indispensable element of proper certification. And because the article requires that such screening process be "express," proper certification must incorporate the trial court's articulation of its analysis or rationale for certification. An inherent and necessary component of the codal concept of "express determination" is the objective expression of the reasoning employed in arriving at the ultimate result determined. A statement of reasons, explanation, or analysis need not be exhaustive in scope or tedious in length, as long as it succinctly sets forth those reasons and the relevant factors considered in that regard. Similarly, the form of the trial court's reasons is not sacrosanct, provided they meet the preceding standard and are manifest from the record of the proceedings below.[5]
Because we are determining the merits of the partial final judgments rendered under La. C.C.P. art. 1915(A) in both the earlier appeal and this appeal, because the article 1915(B) judgments here involve the identical precise issues on the merits, and because this case is our first detailed articulation of the proper procedures involved in "determination and designation," I respectfully concur in the result herein.
KUHN, Judge, dissenting.
I disagree with the majority's conclusion that the articulation of reasons for designation of a partial judgment (or partial summary judgment) as final for purposes of an immediate appeal by the trial court is not a jurisdictional defect. I also disagree with the majority's conclusion that the partial summary judgments in favor of insurers Associated Indemnity Company and Hartford Insurance Company, which dismissed the claims of Motorola, Inc. (Motorola) against those insurers under La. C.C.P. art. 1915A(1) and (3), are immediately appealable without need for certification under article 1915B for the reasons expressed in my dissent in Motorola Inc. v. Associated Indem. Corp, 02-0716 (La. App. 1st Cir.4/30/03), 867 So.2d 715 (Motorola I).
The plain language of La. C.C.P. art. 1915B as enacted by the legislature states:

*738 B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added.)
As I pointed out in my dissent in Motorola I, 02-0716, 867 So.2d at 721, according to Louisiana Civil Code article 9, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. No further interpretation may be made in search of the intent of the legislature. See also La. R.S. 1:4 (when the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit).
And the appropriate starting point for statutory interpretation then is, of course, the language of the statute itself. In re Louisiana Health Service and Indem. Co., 98-3034 (La.10/19/99), 749 So.2d 610; see also A.K. Durnin Chrysler-Plymouth, Inc. v. Jones, XXXX-XXXX (La.App. 1st Cir.5/10/02), 818 So.2d 867. Therefore, when a statute is clear, unambiguous, and its application does not lead to absurd consequences, there is no justification for considering comments to the enactment as persuasive sources or interpretive aids. Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991). It is only when the language of a statute is subject to more than one reasonable interpretation that the determination of the legislature's intent in enacting the provision becomes necessary. Louisiana Mun. Ass'n v. State, XXXX-XXXX (La.10/6/00), 773 So.2d 663.
Louisiana Code of Civil Procedure article 1915B(1) expressly provides that a partial judgment shall not constitute a final judgment unless it is designated by the court after an express determination that there is no just reason for delay. There is nothing ambiguous or unclear in the language employed by the legislature. Simply stated, article 1915B(1) means that when the trial court renders a partial judgment or partial summary judgment, it must expressly determine why the parties are entitled to an immediate appeal.
In part, the majority justifies its usurpation of the legislature's express delegation to the trial court of the management of the appealability of its partial judgments by pointing out a rejection of commentators' recommendation that article 1915B be amended to include language requiring the trial court to sign a certificate expressly stating why an immediate appeal is warranted. But this overlooks the obvious fact that article 1915B is not ambiguous. Thus, no search of the legislative intent is warranted. Interestingly, the majority does not articulate the various reasonable interpretations of the language of article 1915B(1) that justifies its search for legislative intent.
*739 There is nothing absurd or unclear in article 1915B. I initially note that while the majority's analysis seems to focus on whether there exists a written determination of finality by the trial courts, I see nothing in article 1915B(1) that expressly requires a writing. A trial court's oral reasons for finality certainly constitute "an express determination."
It is the legislative authority granted to the trial court in article 1915B(1) which permits immediate review of an interlocutory judgment. And in those instances where the trial court does not express its "determination and designation" that a partial judgment is final, the language of article 1915B(2) expressly allows that partial judgment to "be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties." The language employed by the legislature in article 1915B(1) "after an express determination that there is no just reason for delay" sets forth the requisite with which the trial court must comply in order to bypass the legislatively-delegated trial court responsibility of subsection (2) to revisit the issues raised in partial judgments at a later juncture of the proceeding.
In essence, by its ruling today, the majority's directive that this court is to conduct a de novo review on the issue of the immediacy of the appeal of a partial judgment when the trial court's reasons are neither apparent nor provided by the trial court removes from the trial court's original jurisdiction its important role as ultimate fact finder. In so doing, the potential exists for the appellate court to close the door on the trial court's power to revisit issues which, with discovery and the development of admissible evidence, may have revealed a deeper truth than the initial appearance cast in the early stages of litigation. Remanding for an articulation of the rationale behind the trial court's decision gives the court the power to revisit at a later stage its partial judgment made early on, and thus, is not simply a dilatory exercise.
Under the noble spirit of relieving overburdened trial courts of a perfunctory duty, the majority has simply created an avenue which allows a court of appeal, allotted appellate jurisdiction under La. Const. art. V, § 10, to substitute its judgment for that of the trial court, a court of original jurisdiction under La. Const. art. V, § 16. That which is obvious to a court of appeal is no less obvious to the trial court. Mandating an articulation by the trial court of the "express determination that there is no just reason for delay" legislatively-delegated to it compels the trial court to reflect upon, in consideration of the entirety of the lawsuit, its obligation as a court of original jurisdiction. Should we, on de novo examination of the reasons for permitting an immediate appeal, determine there is no just reason for delay when the trial court would not have done so, we have eliminated from the trial court the power to revise its partial judgment and render a different determination. When factual findings are implicated, this approach surely encroaches on the trial court's original jurisdiction.
When we are grappling with solutions to reduce the delays created by the heavy caseload, taking within our purview a power expressly delegated to the trial courts by the legislature when it is unclear whether the trial court has duly considered the effect of finality of a partial judgment or partial summary judgment seems to me to be, at a minimum, an anomaly. In its broadest application, we may well be infringing on the original jurisdiction of the trial court.
Under the plain language of La. C.C.P. art. 1915B(1), I would remand to the trial *740 court the partial summary judgment granted in favor of Continental Casualty Company, ordering that the court express its determination why there is no just reason to delay appellate review of the partial summary judgment.
For these reasons, I respectfully dissent.
McCLENDON, J., concurring.
While I agree with the majority that reasons for final designation are not required, I would further hold that LSA-C.C.P. art. 1915B clearly requires an "express determination," by the trial court, either oral or written, that there is no just reason for delay. While said "express determination" need not be a formulaic statement, it does require some expression clearly indicating that there is no just reason for delay. I do not believe the majority opinion addressed this requirement.
I am of the opinion that article 1915B imposes a dual requirement, not only requiring a final designation, but also requiring an express determination of no just reason for delay, as clearly indicated by the language used in the article:
[T]he judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay. (Emphasis added.)
Moreover, Article 1915B(2) begins: "In the absence of such a determination and designation..." (Emphasis added).
I do agree with the majority that the failure of the trial court to make a final designation is not a fatal flaw, and that supplementation of the record of such designation should be allowed. I would suggest that the failure by the trial court to make an express determination that there is no just reason for delay be handled in the same manner as suggested by the majority opinion for a failure to designate, allowing supplementation of the record of such determination.
For these reasons, I respectfully concur.
NOTES
[1] The underlying class actions include Naquin v. Nokia, Inc. (originally filed in Civil District Court for the Parish of Orleans, State of Louisiana); Pinney v. Nokia, Inc. (originally filed in the Circuit Court for Baltimore City, State of Maryland); Farina v. Nokia, Inc. (originally filed in the Court of Common Pleas for Philadelphia County, State of Pennsylvania); Gillian v. Nokia, Inc. (originally filed in the Supreme Court of the State of New York, Bronx County); and Gimpelson v. Nokia, Inc. (originally filed in the Superior Court for Fulton County, State of Georgia). All of the underlying class actions were removed to federal court and joined as one multi-district action in the United States District Court for the District of Maryland. On March 5, 2003, the underlying class actions were dismissed on the grounds that federal law preempted the causes of action asserted. In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation, 248 F.Supp.2d 452 (D.Md.2003). As of this writing, that judgment is on appeal to the United States Court of Appeals for the Fourth Circuit under docket number 03-1433.
[2] The underlying individual actions are Newman v. Motorola, Inc., pending in the Circuit Court for Baltimore City, Maryland, and Brower v. Motorola, Inc., pending in the Superior Court of the County of San Diego, California.
[3] That judgment was the subject of Motorola I.
[4] As we observed in Motorola I, however, the character of this action as one seeking declaratory judgment does not prevent appellate review of partial final judgments rendered by the trial court. Motorola I, 867 So.2d at 717.
[5] Louisiana Code of Civil Procedure article 966E states: "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." In Motorola I, we held that the type of partial summary judgment rendered under article 966E, which article 1915A(3) excludes, is that which does not dismiss a party from the action, or one determinative of less than all issues on the merits between the opposing parties. For convenience, such a partial summary judgment may be termed an "issue" summary judgment.
[6] Although article 1915B refers to the judgment being "designated" as final, many times the courts have referred to the judgment being "certified" as final. We have chosen to use the verb "designated" to comport with the codal language.
[7] The Code went into effect January 1, 1961.
[8] See, e.g., Feinstein v. Resolution Trust Corp., 942 F.2d 34, 39-40 (1 Cir.1991) (where the reasons were apparent, it "would be sacrificing substance on the altar of form" to dismiss appeal for lack of appellate jurisdiction simply because the trial court failed to provide written reasons); Perez v. Ortiz, 849 F.2d 793, 796 (2 Cir.1988) (district court should offer a brief, reasoned explanation rather than merely repeat the formulaic language of the rule, but the policies underlying the rule are best served by exercising jurisdiction over an appeal where reasons the district court would provide on remand were "obvious"); Carter v. City of Philadelphia, 181 F.3d 339, 345-346 (3 Cir.), cert. denied, 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999) (written reasons are not "a jurisdictional prerequisite but ... a prophylactic means of enabling the appellate court to ensure that immediate appeal will advance the purposes of the rule"; thus absence of reasons does not impose a jurisdictional bar "when the propriety of the appeal may be discerned from the record."); Fox v. Baltimore City Police Dep't, 201 F.3d 526, 531-532 (4 Cir.2000) (reasons would have been "helpful"; appeal maintained where "pure question of law" was involved and no "terrible consequences" would result from hearing the appeal); Kelly v. Lee's Old Fashioned Hamburgers, 908 F.2d 1218 (5 Cir. 1990) (if the language of the judgment alone or in combination with the record reflected an unmistakable intent to designate the judgment as final, the rule's requirements were satisfied); Kocher v. Dow Chemical Co., 132 F.3d 1225, 1228 (8 Cir.1997) (quoting Kelly); Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9 Cir.1991) (lack of specific findings was not a jurisdictional defect); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 732 n. 1 (9 Cir.1987) (waste of judicial resources to remand for lack of reasons where parties had already briefed the merits); Old Republic Ins. Co. v. Durango Air Serv., 283 F.3d 1222, 1225 n. 5 (10 Cir.2002) (giving clearly articulated reasons certainly was "the most desirable practice" so that the court could review the matter" more intelligently," but even without reasons, court reviewed the record and determined judgment was final); Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 166 (11 Cir.1997) (absence of reasons not always fatal; no reasons required if explanation is obvious and remand would result only in unnecessary delay); Building Indus. Ass'n v. Babbitt, 161 F.3d 740, 745 (D.C.Cir.1998) (when the lower court fails to give reasons, "we do the best we can without that assistance," giving no deference to the lower court); W.L. Gore & Assocs. v. International Med. Prosthetics Research Assocs., 975 F.2d 858, 865 (Fed.Cir.1992) (reasons not required when the "posture of the case and the factors justifying entry of judgment are apparent from the materials before" the court).
[9] The 1997 version of article 1915B also permitted appeals of partial judgments upon agreement of the parties. That provision was removed in the 1999 amendment.
[10] The Fourth Circuit has not followed Jackson in all cases. In Montgomery v. Lobman, Carnahan, Batt & Angelle, 98-2098 (La.App. 4 Cir. 2/17/99), 729 So.2d 1075, 1076, writ denied, 99-0784 (La.4/30/99), 743 So.2d 207, the court made no mention of Banks or Jackson, but it found that a handwritten notation in the record"It's appealable"was a sufficient designation.
[11] The refusal to consider the matter under its supervisory jurisdiction was implicitly overruled by the Louisiana Supreme Court's action in Evans v. Charity Hospital, 01-0507 (La.4/20/01), 790 So.2d 8. See Evans v. Charity Hospital, 00-0202 (La.App. 4 Cir. 11/14/01), 801 So.2d 1192 (on remand).
[12] See, e.g., Croker v. Reliance Nat'l Indem. Co., 00-0474 (La.App. 1 Cir. 5/11/01), 800 So.2d 4, 7; Reily v. Frey, 99-1166 (La.App. 1 Cir. 6/23/00), 762 So.2d 728, 729; Gaylord Chem. Corp. v. ProPump, Inc., 98-2367 (La. App. 1 Cir. 2/18/00), 753 So.2d 349, 352; Hubbs v. Anco Insulations, Inc., 98-2570 (La. App. 1 Cir. 12/28/99), 747 So.2d 804, 806 n. 1, writ denied, 00-0325 (La.3/24/00), 758 So.2d 798; Wells v. Sutherland, 98-2272 (La. App. 1 Cir. 11/5/99), 746 So.2d 292, 293 n. 1; Sutherland v. Hibernia Corp., 98-2273 (La. App. 1 Cir. 11/5/99), 746 So.2d 294, 295 n. 1; Varnado v. Hosp. Serv. Dist. No. 1, 98-0468 (La.App. 1 Cir. 4/1/99), 730 So.2d 1066, 1068 n. 2. The Louisiana Supreme Court took the same approach in several cases. See, e.g., Richard v. Mike Hooks, Inc., 01-0145 (La.10/16/01), 799 So.2d 462, 464, cert. denied, 535 U.S. 1018, 122 S.Ct. 1608, 152 L.Ed.2d 622 (2002); Williams v. Watson, 01-0495 (La.10/16/01), 798 So.2d 55, 56 n. 1.
[13] Dean v. United Med. Ctr., 01-1414 (La.App. 4 Cir. 4/17/02), 816 So.2d 926, 930, writ denied, 02-1386 (La.9/13/02), 824 So.2d 1177.
[14] Meeting of House Committee on Civil Law and Procedure, 1999 Regular Session, April 20, 1999 (La.1999) (statements of Prof. Howard W. L'Enfant, Jr., and Rep. F. Charles McMains, Jr., chairman).
[15] While prior jurisprudence refers to written reasons, we recognize that many trial courts routinely give oral, rather than written, reasons. Reasons in either form, written or oral, that explain the trial court's rationale for designating a judgment as final are beneficial.
[16] Banks, 708 So.2d at 525, citing Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3 Cir.1975).
[1] The U.S. Supreme Court in Curtiss-Wright did not expressly address the issue of whether the district court was required to explain or assign reasons as part of the "express determination" that appeal is appropriate. Significantly, though, the district court in that case had issued a detailed written statement of reasons supporting its decision in favor of certification. Curtiss-Wright, 446 U.S. at 8-9, 100 S.Ct. at 1463-64. Thus, there was no compelling need for the Supreme Court to directly address that aspect of the certification process. The district court's well-articulated reasons obviously guided the Supreme Court's ultimate decision to reverse the court of appeals and to reinstate the district court's certification as within its discretion.
[2] Even prior to rendition of Curtiss-Wright, the U.S. Court of Appeals for the Second Circuit had already expressed its view that "the trial court [should] marshal the competing considerations and state the ones considered to be most important" when certifying a partial judgment under Rule 54(b), and in doing so should "make a brief, reasoned statement in support of its determination that `there is no just reason for delay.'" Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 275 (2nd Cir.1968). The U.S. Court of Appeals for the Sixth Circuit followed the lead of the Second Circuit in Solomon v. Aetna Life Insurance Company, 782 F.2d 58 (6th Cir.1986). The court first observed that Rule 54(b) "is not to be used without due deliberation." Solomon, 782 F.2d at 60. It then held that "[c]ertainly a proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of `no just reason for delay.'" Solomon, 782 F.2d at 61. Holding that the rule requires written reasons, the court noted that "[i]f no reasons were given then we cannot tell if there has been an abuse of discretion." Id. The court proceeded to dismiss the appeal for lack of jurisdiction.
[3] In the case of Taylor v. Federal Deposit Insurance Corporation, 132 F.3d 753 (D.C.Cir. 1997), the U.S. Court of Appeals for the District of Columbia Circuit implicitly approved of the analysis of the dissenters in Kelly, admitting the difficulty in responding to their contrast of the terms "express" and "implied." The court acknowledged that requiring the trial court to expressly state that there is no just reason for delay "would have its pay-off in future cases, by inspiring closer district court focus on the criteria of Rule 54(b) and by removing ambiguities as to what they actually require." Taylor, 132 F.3d at 760-61. That court also spoke favorably of requiring a statement of reasons for certification, noting that "[t]he lack of such a statement may leave the appellate court uncertain whether the district judge [sic] exercised its discretion soundly, or indeed whether it exercised its discretion at all." Taylor, 132 F.3d at 761. Cf. Building Industry Association v. Babbitt, 161 F.3d 740, 745 (D.C.Cir.1998). Other federal appellate courts have held that the absence of reasons for certification is not a jurisdictional bar to an appeal. Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944, 948-49 (7th Cir.1980); Carter v. City of Philadelphia, 181 F.3d 339, 345-46 (3rd Cir. 1999). In the latter cited case, the court held that "the absence of an explanation by the district court does not pose a jurisdictional bar when the propriety of the appeal may be discerned from the record," but also "adhere[d] to [its] consistent requirement that the district courts provide a brief statement of reasons." Carter, 181 F.3d at 345-46, 347. Nevertheless, in my view the unmistakable trend in the federal courts is toward requiring the district courts to articulate their reasons for certification, even if the absence of reasons is not viewed as a jurisdictional defect. The Federal Court of Appeals Manual, a guide for the practitioner rather than an authoritative treatise, advises the practitioner that he has "an interest in seeing that the district court's reasons for certification are adequately articulated in view of the increasing demand by appellate courts for the district court to explain its reasons for certification." Fed. Ct.App. Manual, § 3.6 (4th ed.). It therefore recommends that the practitioner provide the district court with articulated reasons for certification for incorporation into its decision. That reference further observes that "[t]he district court's explanation is especially important for effective review when the reasons for certification are not self-apparent." Id. Finally, it points out that in a case where the reasons are unclear, the appellate court "may remand for further proceedings [for clarification] or dismiss the appeal." Id.
[4] The Fourth Circuit's decision in Jackson was tacitly reversed in part by the Louisiana Supreme Court in Evans v. Charity Hospital in New Orleans, 01-0507 (La.4/20/01), 790 So.2d 8, but only as to the Fourth Circuit's "blanket" holding that it would no longer convert an improperly certified partial summary judgment to a writ application. Thus, the prior rule whereby the Fourth Circuit reserved its right to invoke its supervisory jurisdiction on a case-by-case basis was reinstated. See Evans v. Charity Hospital in New Orleans, 00-0202, p. 3 (La.App. 4th Cir.11/14/01), 801 So.2d 1192, 1195. The essence of supervisory jurisdiction is the appropriate, judicious exercise of discretion in invoking it, and a "blanket" rule against its invocation would be in derogation of our authority and responsibility to do justice. Where irreparable injury is not shown and no other compelling reasons exist for the invocation of supervisory jurisdiction over an improperly-certified appeal, remand for reasons or dismissal of the appeal should be ordered.
[5] For example, a transcription of oral reasons or a detailed minute entry may be adequate, although formal written reasons, composed with the benefit of reflection, would obviously be preferable. The trial court by order or court rule should require any party seeking certification to provide it with reasons supporting that result, in order to aid the court in meeting the duty of "express determination" imposed by the legislature. Enforcing the plain meaning of article 1915(B) in such fashion cannot reasonably be deemed unduly burdensome on the trial courts.