896 So.2d 1078 (2005)
Charles ROUNDTREE and Betty Smith Roundtree
v.
The NEW ORLEANS AVIATION BOARD, New Orleans International Airport and/or The City of New Orleans; Powell Insurance Company and XYZ Insurance Company.
No. 2004-CA-0702.
Court of Appeal of Louisiana, Fourth Circuit.
February 4, 2005.
*1080 Robert J. Young, III, Young, Richaud & Myers, LLC, Metairie, LA, for Defendant/Appellee (Agricultural Excess and Surplus Insurance Company).
Emile A. Bagneris, III, Ginger K. DeForest, Ungarino & Eckert, L.L.C., Metairie, LA, for Defendants/Appellants.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge LEON A. CANNIZZARO, JR., Judge ROLAND L. BELSOME).
PATRICIA RIVET MURRAY, Judge.
This is an insurance coverage dispute. The dispute is whether the commercial general liability policy issued by Agricultural Excess and Surplus Insurance Company ("Agricultural") to G.P. Glynagin Enterprises, Inc. ("Glynagin"), a subcontractor, provides coverage for two alleged additional insureds: (i) Glynagin's contractor, Hamp's Enterprise, Inc. ("Hamp's); and (ii) the property owner, the New Orleans Aviation Board, the New Orleans International Airport, and the City of New Orleans (collectively "the New Orleans Defendants"). From the trial court's decision granting Agricultural's motion for summary judgment based on its finding of no coverage, the New Orleans Defendants, Hamp's, and Scottsdale Insurance Company ("Scottsdale") (Hamp's insurer) appeal. For the following reasons, we reverse in part, affirm in part, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
On March 14, 1995, Charles Roundtree, a Glynagin employee, was injured while in the course and scope of his employment. At the time of the accident, Mr. Roundtree was inspecting a roof on a house owned by the New Orleans Defendants in preparation for removing the asbestos shingles. As Mr. Roundtree probed the wood underneath the roof shingles, the roof allegedly caved in, causing him to injure his knee.
On March 14, 1996, Mr. Roundtree and his wife filed suit against the New Orleans Defendants. The New Orleans Defendants answered, denying liability. On April 26, 1999, the New Orleans Defendants filed a third party demand against Glynagin and its insurer, Agricultural. The New Orleans Defendants alleged that an indemnification agreement existed among the New Orleans Defendants, Hamp's, and Glynagin. The New Orleans Defendants further alleged that Glynagin *1081 contracted to defend Hamp's and the New Orleans Defendants for any acts or omissions of Glynagin or its employees and that Agricultural had issued a policy of insurance naming Hamp's and the New Orleans Defendants as additional insureds.
On June 1, 1999, Agricultural answered, denying that its policy provided coverage as alleged, claiming that its policy specifically excluded such coverage, and denying that Glynagin owed indemnity to the New Orleans Defendants.
On December 15, 2000, the Roundtrees filed a supplemental and amended petition adding three defendants: Hamp's, Scottsdale, and Agricultural. They alleged that Hamp's was liable pursuant to La. Civ.Code arts. 2315, 2316 and 2317 and that Hamp's failed to take adequate precautions to prevent Mr. Roundtree's injuries.
On December 14, 2001, Scottsdale filed a motion for summary judgment seeking to be dismissed from the suit on the grounds that Agricultural's insured, Glynagin, had agreed to indemnify and defend the New Orleans Defendants and Hamp's. Alternatively, Scottsdale argued that the court should declare Scottsdale and Agricultural to be co-primary insurers.
Agricultural, as both a direct and a third party defendant, and Glynagin, as a third party defendant, also filed a motion for summary judgment.[1] They argued that neither Glynagin nor Hamp's owed indemnification to the New Orleans Defendants. Continuing, they argued that neither the contract between Glynagin and Hamp's nor the contract between Hamp's and the New Orleans Defendants provided indemnification for either Hamp's or the New Orleans Defendants' own negligence.
On April 5, 2002, the trial court granted Scottsdale's motion for summary judgment motion, but denied Glynagin's and Agricultural's motion. On Agricultural's appeal, we reversed the trial court, reasoning:
The plain language of the indemnity agreement in question indicates that Glynagin agreed to defend Hamp's in any action brought against Hamp's for any acts or omissions of Glynagin. There is nothing in the entire contract between the parties to suggest that Glynagin agreed to indemnify either Hamp's for Hamp's own negligence or strict liability, or the New Orleans defendants for their own negligence and/or strict liability. Plaintiffs have alleged that Hamp's was negligent for failing to warn Mr. Roundtree about the dangerous roof condition. That issue has yet to be decided. Thus, it was error for the trial court to order Glynagin to defend Hamp's against the allegations made specifically against Hamp's. In turn, it was error for the trial court to order Glynagin to defend the New Orleans defendants because Glynagin was not contractually bound to indemnify the New Orleans defendants in any way.
Roundtree v. New Orleans Aviation Bd., XXXX-XXXX, p. 9 (La.App. 4 Cir. 4/9/03), 844 So.2d 1091, 1096, writ denied, XXXX-XXXX (La.9/19/03), 853 So.2d 639 (emphasis in original).
In our prior opinion, we declined to reach the insurance coverage issues presented in this case because the trial court had not decided those issues. We thus remanded this case to the trial court for resolution of those issues. On remand, Agricultural filed a second motion for summary judgment seeking a determination *1082 that it did not provide coverage to either Hamp's or the New Orleans Defendants. Hamp's, the New Orleans Defendants, and Scottsdale filed a cross motion for summary judgment seeking a determination that Agricultural's policy did provide coverage and that its coverage was primary.[2]
On December 23, 2003, the trial court rendered judgment granting Agricultural's motion for summary judgment and declaring the cross motions moot. This appeal followed.[3]

APPELLATE JURISDICTION
Before reaching the merits of this appeal, we first must address the jurisdictional issue of whether the trial court's judgment is a final judgment for purposes of immediate appeal under La. C.C.P. art. 1915. Under the present version of La. C.C.P. art. 1915(B), as amended in 1999, the trial court's December 23, 2003 judgment dismissing Agricultural would be a final judgment under La. C.C.P. art. 1915(A), and would be appealable under La. C.C.P. art. 1911, which provides that "[a]n appeal may be taken from a final judgment under Article 1915(A) without the judgment being so designated." La. C.C.P. art. 1911.[4] The Legislature, however, limited the effectiveness of the 1999 amendment to "actions filed on or after January 1, 2000." Because this action was filed on March 14, 1996, the 1997 version of Article 1915(B) applies.[5]
Under the applicable version of Article 1915(B)(1), in order for the December 23, 2003 judgment to be appealable, the trial court was required to both (i) designate it *1083 as final, and (ii) make an express determination that there was no just reason to delay appealing it. Stated differently, the trial court was required to make two separate determinations: (i) whether the judgment is a final one, as opposed to an interlocutory one ("finality determination");[6] and (ii) assuming a final judgment, whether there is any just reason for delaying the appeal of that judgment ("certification decision").
On February 19, 2004, the trial court, at the parties' request, issued an order certifying the judgment in Agricultural's favor "as a final judgment in accordance with La. C.C.P. Art. 1915, for all purposes, including appeal thereof." The trial court's designation of this judgment as a final one is clearly correct because it dismisses a party from the suit. See La. C.C.P. art. 1841.[7] However, under this court's jurisprudence, the trial court's certification of this judgment is arguably deficient in three respects.
The first deficiency is that the trial court failed to recite in its order the statutory language "there is no just reason for delay." Under the facts of this case, we find the trial court's express reference to the statutory provision in its order was sufficient. To hold otherwise would be to place form over substance.[8]
The second deficiency is that when the original notice of appeal was filed, the trial court had not issued a certification order. The Appellants cured this deficiency by obtaining a certification order from the trial court on February 19, 2004, and thereafter timely filing a new notice of appeal. This case thus does not present a post-appeal certification issue.
The third deficiency is that the trial court failed to give explicit reasons for its determination that there is no just reason for delay. Unlike the other two deficiencies, resolution of this deficiency requires an extensive analysis.
In a line of cases, this court has adopted a "no-reasons, no-jurisdiction" certification rule.[9] That line of cases holds that a trial court must give explicit reasons, on the record, articulating why it determined that there is no just reason for delay.[10] That line of cases also holds that *1084 the trial court's mere parroting of the statutory language "there is no just reason for delay" is insufficient.[11] However, this court's jurisprudence has not consistently followed this rule.[12] Moreover, this court recently held that this court "review[s] the certification on a case by case basis taking into consideration the totality of what was intended and whether in context conclusory statements equate to adequate reasons." LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX, p. 7 (La.App. 4 Cir. 3/3/04), 869 So.2d 304, 308.[13]
Our research reveals that none of the other four circuit appellate courts currently follows a "no-reasons, no jurisdiction" rule.[14] Indeed, two of the other circuits *1085 have expressly declined to follow this court's line of cases espousing that rule.[15] Our research further reveals that the federal Fifth Circuit has construed the verbatim "express determination" language in Rule 54(b) of the Federal Rules of Civil Procedure (from which the Legislature patterned La. C.C.P. art. 1915(B)(1)) as not requiring the district court to give reasons for its finding of no just reason for delay, i.e., certification decision. Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir.1990).[16]
In Kelly, the federal Fifth Circuit noted that the "express determination" requirement serves a dual purpose: (i) reducing "`the uncertainty and the hazard assumed by a litigant who either does or does not appeal from a judgment of the character we have here;'" and (ii) providing the litigants an opportunity to obtain from the district court "`a clear statement of what that court is intending with reference to finality.'" Kelly, 908 F.2d at 1221 (quoting Dickinson v. Petroleum Conv. Corp., 338 U.S. 507, 512, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950)). Considering those purposes, the court concluded that the express determination requirement is satisfied "when the order alone or the order together with the motion or some other portion of the record referred to in the order contains clear language reflecting the court's intent to enter the judgment under Rule 54(b)." Kelly, 908 F.2d at 1221.
Given that this court's "no-reasons, no-jurisdiction" rule apparently is out of step with the jurisprudence of both the federal Fifth Circuit and all four other state appellate circuits, coupled with the inconsistency within this court's own jurisprudence regarding the application of this rule, this court has submitted the issue of the correct construction of the certification requirement under Article 1915(B)(1) to an en banc vote. As a result of that vote, this court has determined that La. C.C.P. Art. 1915(B)(1) only requires the trial court to make an express determination that the judgment is final and that there is no just reason to delay taking an appeal; it does not require that the trial court give explicit reasons for its certification decision. Although the preferable procedure is for the trial court to articulate the reasons for its decision so as to facilitate appellate review of that decision, a trial court's failure to give reasons is not a jurisdictional defect. This court's line of jurisprudence to the contrary is overruled.[17]
*1086 Applying these principles to the instant case, we find the express determination requirement of Article 1915(B)(1) was satisfied. Although the trial court did not give explicit reasons, we find the reasons for its certification decision are apparent from the record for two reasons. First, as noted above, the trial court's judgment resulted in a dismissal of a party and would be a final judgment under Article 1915(A) as amended in 1999. Second, insurance coverage issues were expressly recognized as appropriate for partial summary judgment under former La. C.C.P. art. 966(F), which provided that "[a] summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages;" Article 966(F) was repealed in 1997 as part of the same legislative act that amended Article 1915.
We further find that because the trial court's reasons for its certification decision are apparent from the record, it is appropriate that we apply an abuse of discretion standard to review that decision.[18] Under the circumstances presented in this case, we find the trial court did not abuse its discretion in certifying that there is no just reason to delay appealing this judgment under La. C.C.P. art. 1915(B)(1).

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. A summary judgment declaring no coverage under an insurance policy may not be rendered unless "there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." Id.
In Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, the Louisiana Supreme Court outlined the elementary principles for construing insurance policies, stating:
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent.
The parties' intent as reflected by the words in the policy determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.
An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume.
Ambiguity in an insurance policy must be resolved by construing the policy as a whole; one policy provision is not to be *1087 construed separately at the expense of disregarding other policy provisions.
Id. at 763-64 (internal citations omitted).
The insurance policy in question in this case is a commercial general liability ("CGL") policy. CGL policies are designed to protect the insured against losses to third parties that arise out of the insured's business operations. 9 Lee R. Russ and Thomas F. Segalla, Couch on Insurance 3d, § 129:2 (1997)("Couch on Insurance 3d"). CGL policies typically exclude from coverage personal injuries to employees. Couch on Insurance 3d, § 129:3. "The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public." Id. Application of an employee exclusion clause to an additional insured tends to be "problematic." Couch on Insurance 3d, § 129:6. Although the additional insured's employees are excluded by such exclusionary clauses, "[a]n `employee' exclusion does not apply where the additional insured is not the employer of the injured party." Id.
The issue presented on this appeal is the coverage, if any, of Hamp's and the New Orleans Defendants as additional insureds under the CGL policy Agricultural issued to Glynagin. As required by the contract between Glynagin and Hamp's, the contractor, Hamp's, was added as an additional insured. The policy also contains a provision defining the property owner as an additional insured. The New Orleans Defendants rely on that provision in support of their contention that they are additional insureds.
In analyzing the coverage issues presented, we first note that Agricultural's policy contains a "separation or severability" provision, which provides that the insurance applies:
a. as if each Named Insured were the only Named Insured; and
b. separately to each Insured against whom claim is made or "suit" is brought.
Such severability provisions, in effect, require the policy be construed as providing separate coverage for each insured, i.e.,"as if each was separately insured with a distinct policy." Atchison, Topeka and Santa Fe Ry. Co. v. St. Paul Surplus Lines Ins. Co., 328 Ill.App.3d 711, 716, 767 N.E.2d 827, 831, 263 Ill.Dec. 101 (Ill. Dist.2002). Moreover, such severability provisions have "the effect of rendering the employee exclusion inapplicable where an employee of one insured is injured by the other insured." Couch on Insurance 3d, § 129:6.
With those principles in mind, we separately analyze the coverage issue presented as to each of the alleged additional insureds, Hamp's and the New Orleans Defendants.

COVERAGE OF HAMP'S
Hamp's was added as an additional insured by the following endorsement:
IN CONSIDERATION OF THE ADDITIONAL MINIMUM PREMIUM OF $688; IT IS HEREBY UNDERSTOOD AND AGREED HAMP ENTERPRISES, INC. IS ADDED AS AN ADDITIONAL INSURED PER FORM GA17507 ATTACHED BUT ONLY AS RESPECTS TO THE ASBESTOS ABATEMENT OPERATIONS BEING PERFORMED FOR VARIOUS BUILDINGS OF THE NEW ORLEANS AIRPORT. (Emphasis supplied.)
Although Agricultural acknowledges that Hamp's is an additional insured, it contends that the following exclusionary endorsement applies and excludes coverage of Hamp's for the personal injury claim asserted by the Roundtrees; to-wit:

*1088 ADDITIONAL EXCLUSION  BODILY INJURY TO EMPLOYEES OR PRINCIPALS OF THE OWNER, LESSEE, OR REAL ESTATE MANAGER OF THE "DESIGNATED PREMISES" OR OF A CONTRACTOR OR SUBCONTRACTOR.
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART GA1 75 02 10 89
In consideration of the premium charge, it is understood and agreed that this insurance does not apply to:
"Bodily Injury" to:
* * *
c) An employee or principal of a subcontractor of the insured if they are or were in an "asbestos abatement area" where "asbestos abatement operations" are or were being performed at a "scheduled project" and "designated premises."[19]
Under Agricultural's reading of this exclusionary endorsement, coverage is excluded because an employee (Mr. Roundtree) of the insured's (Hamp's') subcontractor (Glynagin) was injured while performing asbestos abatement operations in an asbestos abatement area.
Appellants do not contest (indeed the Roundtrees' petition alleges) that Mr. Roundtree was injured while performing asbestos abatement operations in an asbestos abatement area. Rather, they contest the applicability of this exclusionary endorsement. They contend that applying this endorsement gives rise to an ambiguity and that, under a settled jurisprudential rule, such an ambiguity must be construed in favor of coverage. See Ledbetter v. Concord General Corp., 95-0809, p. 4 (La.1/6/96), 665 So.2d 1166, 1169. According to Appellants, the ambiguity arises because this exclusionary endorsement for asbestos abatement operations essentially eviscerates the asbestos abatement only coverage that the endorsement adding Hamp's as an additional insured creates.
Applicants contend the exclusionary endorsement on which Agricultural relies is invalidated by the Designated Project Endorsement, which provides:
LIMITATION OF COVERAGE TO DESIGNATED PROJECT
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
SCHEDULE
Project: ASBESTOS ABATEMENT OPERATIONS AS DEFINED IN THE POLICY.
This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:
1. the project shown in the Schedule ["Asbestos Abatement Operations as Defined in the Policy"].
Cross-referencing the policy provisions and definitions, Appellants contend that Agricultural's policy clearly provides coverage to Hamp's "for bodily injury ... *1089 arising out of `asbestos abatement operations.'" They emphasize that the endorsement adding Hamp's as an additional insured limits the coverage it creates to "asbestos abatement operations."
Agricultural replies that the reason for the inclusion of the "asbestos abatement operations" language in the endorsement adding Hamp's is to define the particular project for which coverage is provided. Stated otherwise, it replies that the purpose this limitation serves is to confine Hamp's insured's status to this particular project as opposed to any project that Hamp's may have been performing. Agricultural submits that in the endorsement adding Hamp's it chose to use the phrase "asbestos abatement operations" to reference this project as that is the most efficient way of describing the work Glynagin was performing for Hamp's. Agricultural emphasizes that the pertinent limiting language in that endorsement is not only "asbestos abatement operations," but rather "the asbestos abatement operations being performed for various buildings of the New Orleans Airport." Agricultural emphasizes that when this endorsement adding Hamp's is read in context, it unambiguously provides that the coverage created for Hamp's is limited to the particular project Glynagin was performing, which was asbestos abatement operations for various buildings at the New Orleans Airport.
Answering Appellants' argument that this reading of the policy eviscerates the asbestos abatement only coverage it provides to Hamp's, Agricultural gives the following illustration of the type of claim that would be covered: "a Hamps' [sic] employee was using a wrecking ball to demolish a house and accidentally struck a passing vehicle, causing personal injury to the driver." That driver's claim against Hamp's would be covered. Agricultural's illustration of the extent of coverage provided to Hamp's is consistent with the general principle, noted above, that CGL policies typically include employee exclusions to draw a distinct line between excluded employee claims and covered claims by members of the general public, such as the driver in the illustration.
The trial court apparently found Agricultural's argument persuasive as it granted its summary judgment motion. So do we. Contrary to Appellants' argument, the exclusionary endorsement for employees of the insured's subcontractor is not ambiguous. As noted above, the severability of insureds provision requires we view Hamp's as the insured. Viewing the policy from the perspective of coverage for Hamp's, Mr. Roundtree was only an employee of Hamp's' subcontractor, Glynagin. Since Mr. Roundtree was an employee of the insured's (Hamp's') subcontractor, this exclusion applies. Hence, the policy does not provide coverage to Hamp's for the claim asserted in this case.

COVERAGE OF NEW ORLEANS DEFENDANTS
Although the policy does not expressly add the New Orleans Defendants as additional insureds, it includes an endorsement naming the property owner as an additional insured, which provides:
ADDITIONAL INSURED  PROPERTY OWNERS AND PROPERTY  REAL ESTATE MANAGEMENT FIRMS
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
WHO IS AN INSURED (SECTION II) is amended to include as an Insured, all property owners and property  real estate management firms, but only with *1090 respect to liability arising out of "your work" for that Insured by you.
As noted, the New Orleans Defendants contend that they are covered as additional insureds under this property owner endorsement. They argue that Mr. Roundtree's injuries arose while he was performing asbestos abatement operations for Glynagin on the New Orleans Defendants' property. They further argue that it was because of Glynagin's asbestos removal subcontract that Mr. Roundtree was present on their property when he was injured on the roof. As a result, the New Orleans Defendants contend that they are additional insureds.
Agricultural counters that the New Orleans Defendants are not covered by this property owner endorsement. In support, it cites the limitation in this endorsement to "liability arising out of `your work' for that insured by you," and the policy definition of "your work" as "work or operations performed by you or on your behalf." Because Glynagin had no contract with the New Orleans Defendants, Agricultural argues that Glynagin was performing no work for the New Orleans Defendants. Under Argicultural's reading, Glynagin was performing work only for Hamp's.
Agricultural's narrow reading of this endorsement is contrary to the jurisprudence, which has broadly construed such endorsements. In Gates v. James River Corp. of Nevada, 602 So.2d 1119 (La.App. 1 Cir.1992), the endorsement provided coverage for the owner as an additional insured only with respect to "liability arising out of your [the contractor's] work for that insured [the owner]." The insurer argued that there was no coverage because the contractor, who was performing warranty work, was not working for the owner but rather for a manufacturer of the machine that electrocuted the employee. Rejecting that argument, the court in Gates reasoned that as long as the benefit of the contractor's work flowed ultimately to the owner, the owner was an additional insured. See also Baker v. Sears, Roebuck & Co., 32,651, 32,767 (La.App. 2 Cir. 3/3/00), 753 So.2d 1011; Fleniken v. Entergy Corp., 99-3024 (La.App. 1 Cir. 2/16/01), 790 So.2d 64. Consistent with that jurisprudence, we find the New Orleans Defendants are additional insureds under the property owner endorsement.
Agricultural next argues that even assuming additional insured status, the New Orleans Defendants, like Hamp's, are excluded from coverage by the exclusionary endorsement for an employee of the insured's subcontractor. We disagree. In order for this exclusionary endorsement to apply, Glynagin (Mr. Roundtree's employer) must be the New Orleans Defendants' subcontractor. Glynagin clearly is not; Glynagin is Hamp's' subcontractor. Indeed, Glynagin has no contract with the New Orleans Defendants. Agricultural's reliance on this exclusion is thus misplaced.
Applicants' final argument is that we should rank Agricultural's and Scottsdale's policies. Agricultural counters that this issue is not properly before us. For two reasons, we agree. First, the trial court did not reach this issue as it denied the Appellants' cross motion for summary judgment. Second, although the parties represent that the "other insurance" provision in Scottsdale's policy is identical to the one in Agricultural's policy, the portion of Scottsdale's policy containing that provision is not in the record of this appeal. For these reasons, we thus decline to reach this issue.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed insofar as it *1091 found no coverage for the New Orleans Defendants. In all other respects, the judgment is affirmed, and this case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
C.J. ARMSTRONG, J. JONES, J. MCKAY, J. LOVE, AND J. LOMBARD, concurring in part. We agree with the majority as to the issue of appellate jurisdiction only. That issue and that issue only was presented to the Court en banc for its consideration.
TOBIAS, J., dissents and assigns reasons.
I respectfully dissent.
I address only the issue of whether the judgment before the court is an appealable judgment because that is the sole issue presented for en banc consideration under our rules of court.
Because this case was filed prior to 1 January 2000 (as explained infra), La. C.C.P. art. 1915 as applicable to this case reads as follows:
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, including a summary judgment granted pursuant to Article 966(E).
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
B.(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
C. If an appeal is taken from any judgment rendered under the provisions of this Article, the trial court shall retain jurisdiction to adjudicate the remaining issues in the case.
Acts 1999, No. 89 of the Louisiana Legislature added a new subparagraph to article *1092 1915 A(6), which read: "(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864."
Acts 1999, No. 1263, which became effective on 1 January 2000, amended subparagraph A(3) to read; "(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E)." The act also amended subparagraph B(1) to read:
B.(1)When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
The major change effected by Acts 1999, No. 1263 was to delete the word "parties" from subparagraph B(1).
Act 2001, No. 553 amended subparagraph A(6) to read: "(6) Imposes sanctions or disciplinary action pursuant to Article 191, 863, or 864 or Code of Evidence Article 510(G)."
Pursuant to the express language of this codal article, a partial summary judgment or partial judgment that only disposes of a particular issue or theory of recovery is governed by La. C.C.P. art. 1915, which specifically states that such judgments are not final judgments for the purpose of an immediate appeal unless the trial court designates the judgment as a final judgment after making an express determination that there is no just reason for delay. The judgment in question in the case at bar is clearly a partial judgment.
The mere signing of an order of appeal will not make a partial judgment appealable. Lightell v. Phillip, 2000-2411 (La.App. 4 Cir.9/19/01), 797 So.2d 120; Narcise v. Jo Ellen Smith Hosp., 98-2417, 98-0918 (La.App. 4 Cir.3/10/99), 729 So.2d 748. Moreover, this court has stated that valid certification of a partial judgment as final requires that the trial court give explicit reasons on the record as to why there is no just reason for delay; mere conclusory statements do not suffice. Altvater v. LaBranche Properties Inc., XXXX-XXXX, p. 6 (La.App. 4 Cir.3/31/04), 871 So.2d 1197, 1201, citing Lightell v. Phillip, supra; Nalty v. D.H. Holmes Co., Ltd., 99-2826 (La.App. 4 Cir.12/27/00), 775 So.2d 695; Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir.2/3/99), 729 So.2d 1060; Montgomery v. Gosserand, 98-1966 (La.App. 4 Cir. 12/23/98), 725 So.2d 92. When the trial court fails to state why no reason exists for delay of the right to appeal, a party does not have the right to an immediate appeal; rather, the right to appeal remains until after final judgment is rendered adjudicating all of the claims, demands, issues, and theories of the case. R.J. Messinger, Inc. v. Rosenblum, 2003-2209 (La.App. 4 Cir.6/2/04), 876 So.2d 898, 901, writ granted, XXXX-XXXX (La.10/15/04), 883 So.2d *1093 1060.[1]
However, this court has not been consistent in requiring explicit reasons why there is no reason for delay of the right to an immediate appeal. In LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX (La.App. 4 Cir.3/3/04), 869 So.2d 304, this court, while recognizing that valid certification of a partial judgment as final requires that the trial court give reasons on the record as to why there is no just reason for delay, refused to dismiss a case merely because the trial court only gave conclusory statements. Rather, this court stated, "we review the certification on a case by case basis taking into consideration the totality of what was intended and whether in context conclusory statements equate to adequate reasons." Id., at p. 7, 869 So.2d at 308. Thus, while acknowledging that a jurisdictional defect apparently existed where the trial court failed to state why there was no reason for delay of the defendants' right to appeal and where no specific reasons as to why there is no just reason for delay appeared in the record, this court found that the trial court properly certified the partial judgment as appealable because the judgment in question terminated certain issues in the suit as to the parties even though the same parties would continue to litigate the remaining issues.
The holding in LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc. appears to be consistent with the position of the First Circuit, which does not require explicit reasons in order for the court to exercise jurisdiction over an appeal of an improperly designated partial judgment. Rather, the First Circuit in Motorola, Inc. v. Associated Indem. Corp., XXXX-XXXX (La.App. 1 Cir.10/22/03), 867 So.2d 723, stated that although a trial court's explanation of its designation of a judgment as final for purposes of appeal is the most desirable practice, a trial court's failure to give specific reasons for designating a partial judgment as final is not a jurisdictional defect. Rather, the court concluded that in cases in which the trial court designates a partial judgment as final for purposes of appeal and the reasons were neither apparent nor provided to the appellate court by the trial court, the appellate court should conduct a de novo review to determine whether the partial judgment is final pursuant to La. C.C.P. art. 1915.
This court denied a motion to dismiss an appeal although no explicit reasons for designating a partial judgment as final was given by the trial court in Touro Infirmary v. Sizeler Architects, A Professional Corp., No. 2004-CA-0634, unpub. In Touro Infirmary, the defendant, Designtex Group, Inc., filed an appeal seeking appellate review of a motion for partial summary judgment and to strike the comparative fault defense to the plaintiff's redhibition claim. The plaintiff's counsel filed a motion to dismiss the appeal because the trial court failed to give express reasons for designated the judgment as final and appealable. The judgment issued by the trial court stated that, "[t]he Judgment on this Motion is designated as a final appealable judgment pursuant to Louisiana Code of Civil Procedure articles 1915(B) and 2083." However, remarks made by trial court at the hearing on the plaintiff's motion indicated that the trial court apparently declared the judgment final in order for the defendants to "take a writ on it." However, instead of timely filing a writ application, the defendant appealed.
*1094 Notwithstanding the lack of explicit reasons for finding no reason for delay of an appeal and notwithstanding the trial court's remarks indicating that the trial court meant for the defendants to take a writ, two judges of this court, in an order dated 22 June 2004, denied the plaintiff's motion to dismiss the appeal. One judge dissented, finding that the trial judge had not made an expresses statement as to the finality of the judgment for purposes of an appeal. The plaintiff's motion for rehearing was denied on 15 July 2004, and the case was placed on the docket for argument before a different three-judge panel. The plaintiff filed a writ application in the Louisiana Supreme Court. In the meantime, on 5 October 2004, the case was argued in this court. To date, it does not appear that the Supreme Court has ruled on the plaintiff's writ application and this court has not rendered a decision in the case on the merits.[2]
Although the Louisiana Supreme Court has not yet ruled on the writ application in Touro Infirmary, that court indirectly addressed the issue of how motions for partial summary judgments should be handled in a recent case. In Crescent City Physicians, Inc. v. Desse, No. 2004-CA-0123, the defendants sought supervisory writs of a 6 November 2003 judgment granting the plaintiff's motion for partial summary judgment as to liability in a contract dispute case. The writ (No. 2003-C-2130) was filed on 5 December 2003, and the appeal (No. 2004-CA-0132) lodged in this court on 27 January 2004. The issues raised in the writ and the appeal were the same, i.e., whether the trial court erred by enforcing agreements that violated provisions of the Social Security Act and whether the trial court erred by granting the plaintiff's motion for partial summary judgment as to liability even though there are unresolved factual issues in the case.
On 2 February 2004, the plaintiff filed a motion to dismiss the defendant's appeal arguing that the judgment granting the motion for summary judgment was not an appealable judgment because it was neither an interlocutory judgment which may cause irreparable injury, nor a certified final judgment from which an appeal may be taken because it did not dispose of all issues between the parties. On 24 March 2004, this court issued an opinion in the writ application affirming the grant of partial summary judgment on behalf of the plaintiff. Shortly thereafter, on 30 March 2004, this court by a 2-1 vote denied the plaintiff's motion to dismiss the appeal. The dissent stated:
The judgment on liability based upon the motion for partial summary judgment falls under La. C.C.P. art. 966 E. By virtue of the literal language of La. C.C.P. art. 1915A, the judgment is not immediately appealable in the absence of appropriate certification pursuant to La. C.C.P. art. 1915B, stating that (1) no just reason for delay exists after an express determination of such (i.e. the trial court giving reasons stating why there is no just reason for delay) and (2) an express determination by the trial court that the judgment is final. No irreparable injury is shown which would require an immediate appeal. See, Miller v. Tassin, 2002-2383 (La.App. 4 Cir.6/4/03), 849 So.2d 782."
On 19 April 2004, the plaintiff filed an application for rehearing and argued that in addition to the case not being appealable because no irreparable injury would occur and no certification as a final judgment was present, the appeal had been *1095 mooted by the 24 March 2004 judgment rendered on the writ.
On 27 April 2004, this court denied the plaintiff's request for a rehearing in the case. The plaintiff filed a writ application with the Louisiana Supreme Court. That court granted the plaintiff's writ application on 1 October 2004 in an order signed by six of the justices, stating, "Granted. Realtor's motion to dismiss the appeal of the 6 November 2003 partial summary judgment on the issue of liability is granted for the reasons assigned by the dissenting judge in the court of appeal."
This statement by the Supreme Court clearly indicates that a partial summary judgment is not immediately appealable in the absence of the appropriate certification, particularly where no irreparable injury is shown which would require an immediate appeal. The only irreparable injury claimed by the defendant is that the case would have to be re-tried should the appellate courts subsequently determine the trial court erred in striking the comparative fault defense. However, in Miller v. Tassin, this court specifically rejected the argument that forcing a party to retry the case constitutes irreparable injury. Miller, p. 2, 849 So.2d at 783. We relied on the seminal case of Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), discussed infra.
In the absence of express reasons for reaching the conclusion that there is no reason to delay an appeal, this court has on numerous occasions dismissed appeals lacking the required designation and reasons. The more notable examples, because of the detailed explanation and/or analysis given by the court, are Miller v. Tassin, 2002-2383 (La.App. 4 Cir.6/4/03), 849 So.2d 782; Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir.2/3/99), 729 So.2d 1060; Nalty v. D.H. Holmes, Ltd., 99-2826 (La.App. 4 Cir.12/27/00), 775 So.2d 695 (wherein this court dismissed without prejudice an appeal involving a judgment that was not appealable).
More recently, in Altvater v. LaBranche Properties, Inc., XXXX-XXXX (La.App. 4 Cir.3/31/04), 871 So.2d 1197, this court adhered to the practice of dismissing improper appeals of partial summary judgment instead of converting such appeals to writs. In Altvater, the plaintiff sought damages for injuries allegedly sustained when she tripped and fell while attempting to enter a restaurant. She sued the restaurant and the alleged owner of the premises leased by the restaurant. The trial court granted the alleged owner's motion for summary judgment and dismissed it from the suit, but the court denied the restaurant's motion for summary judgment. The plaintiff appealed the granting of the alleged owner's motion for summary judgment. This court found that under the version of La. C.C.P. art. 1915 in effect at the time of the action, the partial judgment was not appealable. Accordingly, we dismissed the appeal without prejudice.
In Ahner v. Hatfield, XXXX-XXXX (La.App. 4 Cir.12/30/03), 865 So.2d 205, the defendant insurer filed an appeal seeking review of a judgment denying an insurer's motion for summary judgment. Following the denial of the motion, the parties, averring that there was "no just reason for delay," filed a joint motion and order to make the judgment final. This court ordered the defendant to show cause why the judgment was not "interlocutory in nature and lacking proper certification." This court stated that it agreed with the dissent of Judge Kuhn in Motorola, Inc. v. *1096 Associated Indem. Corp., supra, to the effect that La. C.C.P. art. 1915 requires an express determination that there is no just reason for delay before a partial judgment can be designated as a final judgment and the mere use of the cursory language "there is no just reason for delay" is insufficient. Noting that the judgment was interlocutory, this court converted the appeal to a writ application and considered the merits under its supervisory jurisdiction. It is not clear why the court in Ahner chose to discuss the certification issue. Clearly a judgment denying a motion for summary judgment is an interlocutory judgment. Even if the trial court had attempted to correctly designate the judgment, the judgment still would not have been final and appealable. Thus the designation discussion might very well be considered dicta.
In the case of In re Depland, XXXX-XXXX (La.App. 4 Cir.8/6/03), 854 So.2d 438, this court again converted a non-appealable judgment to a writ and decided the merits. In that case this court concluded that the judgment sought to be appealed was an interlocutory judgment, and that the plaintiff, who sought to appeal the judgment, had made no allegation or showing of irreparable harm. Accordingly, the court concluded that the judgment was not appealable. Additionally, this court noted that the trial court had not certified the judgment as final and appealable pursuant to La. C.C.P. art. 1915 B(1). Although the judgment was interlocutory and no allegation or showing of irreparable injury was made, this court, nevertheless, converted the plaintiff's appeal to an application for a supervisory writ of review and rendered a decision on the merits. The court gave two reasons for exercising its general supervisory jurisdiction. First, the court based its decision on the statutory authority granted to it by La. C.C.P. art. 2164, and second, the court decided the case on the merits, "in the interest of judicial economy." Id. at p. 3, 854 So.2d 440.
The inconsistencies in handling the grant of partial judgments have led to the practice of some litigants filing simultaneous writs and appeals on the same issue. The issue of whether the grant of a partial judgment should be considered in a writ application, on appeal immediately after rendition of the judgment, or an appeal after the trial on the merits may very well be one that is dependent upon the facts of the individual cases. Nevertheless, the legislature, by enacting La. C.C.P. art. 1915, has entrusted the initial determination of this issue to the trial court, but that the trial court must give explicit reasons for determining that no reason for delay of an immediate appeal exists in order for such judgments to be considered final and appealable. However, if the judgment is one where bona fide irreparable injury may result, it appears this court will decide the case on the merits. To me, bona fide irreparable injury means (a) more than the panel wants to address the issue or (b) the panel wants to address the issue because it will help the parties or counsel in the case resolve the issues.
The majority relies in large part upon an interpretation of Rule 54b of the Federal Rules of Civil Procedure. Rule 54b of the Federal Rules of Civil Procedure, upon which article 1915 is patterned, reads as follows:
(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry *1097 of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
In Curtiss-Wright Corporation v. General Electric Company, 446 U.S. 1, 8, 100 S.Ct. 1460, 1464-65, 64 L.Ed.2d 1 (1980), the United States Supreme Court, in explaining the trial court's role and in interpreting Rule 54b, held:
Once having found finality, the district court must go on to determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a "dispatcher." It is left to the sound judicial discretion of the district court to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised "in the interest of sound judicial administration."
The various federal circuit courts of appeals have subsequently split over the interpretation and application of Rule 54b in spite of the United States Supreme Court's mandate. A closely divided (10-7) Fifth Circuit Court of Appeals in Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir.1990) sitting en banc held that Rule 54b did not require that the district court recite verbatim the phrase "no just reason for delay" in order to properly certify a partial final judgment for appeal. The slim majority held that if either the judgment alone or in combination with the record reflected an unmistakable intent to certify the judgment, Rule 54(b)'s requirements were satisfied. The Kelly majority acknowledged, however, both the "close vote" of the en banc court and the "sharp" division of the federal appellate courts on the issue. Kelly, 908 F.2d at 1220-21 n. 2. Cf., St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688 (2d Cir.1989) (appeal entertained where district judge wrote "Motion granted So ordered" on the cover of a notice of the motion seeking a Rule 54b judgment) to Mooney v. Frierdich, 784 F.2d 875 (8th Cir.1986) (appeal dismissed where district judge entered "So Ordered" on the face of the motion to "certify its [previously entered] order ... pursuant to ... Rule 54b.") Also cf., Alexander v. Chicago Park Dist., 773 F.2d 850, 855 (7th Cir.1985) to Frank Briscoe Co. v. Morrison-Knudsen Co., 776 F.2d 1414 (9th Cir.1985). It appears to me that the Fifth Circuit's interpretation is not the ultimate expression of a correct interpretation of Rule 54b and the various federal courts of appeals have different views on the issue.
As noted by the dissent in the First Circuit in Motorola, Inc. v. Associated Indem. Corp., supra, an appellate court fulfills its responsibility scrutinizing the trial court's evaluation of the factors supporting certification if that evaluation is expressed and/or articulated; in the absence of an express reason stated by the trial court, no *1098 appellate court can state with certainty what the trial court has in mind.[3] This court should not assume on our initiative the trial court's discretionary authority and mantle of "dispatcher," bestowed upon it by the legislature, by performing its own evaluation. The majority here contradicts itself and in effect "usurp[s] the legislature's authority" by ignoring the article's plain language and elevating our internal rule to the status of positive law. The general approach followed by the Second Circuit in Succession of Grimmett, 31,975 (La.App. 2 Cir.3/5/99), 738 So.2d 27, and Banks v. State Farm Ins. Co., 30,868 (La.App. 2 Cir.3/5/98), 708 So.2d 523, the Fourth Circuit in Jackson v. America's Favorite Chicken Co., 98-0506 (La.App. 4 Cir.2/3/99), 729 So.2d 1060, the Fifth Circuit in Whitney National Bank v. Cambridge Realty Corp., 96-956 (La.App. 5 Cir.2/25/97), 690 So.2d 213, and the First Circuit in Boudreaux v. Audubon Ins. Co., 2001-2061 (La.App. 1 Cir.10/16/02), 835 So.2d 681, and Shapiro v. L & L Fetter, Inc., XXXX-XXXX (La.App. 1 Cir.2/14/03), 845 So.2d 406, is the correct and preferable one.
In Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir.2/3/99), 729 So.2d 1060, this court unanimously and en banc stated:
We expressly disapprove and overrule the procedure of converting the appeal from a non-trial judgment to a supervisory writ and then considering the merits, as was done in Karim v. Finch Shipping Co., Ltd., 97-2518 (La.App. 4 Cir.8/26/98), 718 So.2d 572, and Walker, Bordelon, Hamlin, Theriot and Hardy, etc. v. Dowe, supra, 98-0937, 98-0938 (La.App. 4 Cir.12/9/98), 727 So.2d 529. We agree with our colleagues of the First Circuit that
To entertain by a supervisory writ application and grant a stay of a judgment which is not a final judgment subject to an immediate appeal under Article 1915 would be a blatant circumvention of the spirit of that statute, causing the delay and judicial inefficiency which the statute obviously is designed to eliminate. To substitute one method of review (writ application) for a prohibited method of review (appeal) flies in the face of the legislative pronouncement set forth in Article 1915. Therefore, we will not entertain the merits of this writ application. Review of the judgment must await rendition of a complete final judgment in the case, which will be the proper subject of an appeal, unless the judgment is certified as a final judgment subject to an immediate appeal under Article 1915.

In re: Chemical Release at Bogalusa, 98-1122 at p. 1 (La.App. 1 Cir.8/27/98), 718 So.2d 1015.
While we adopt this reasoning, we decline to certify a partial summary judgment as a final judgment subject to an immediate appeal on the appellate level, as our colleagues did in the case cited above.
Id. at pp. 9-10, 729 So.2d at 1065-66.
In Miller v. Tassin, 2002-2383 (La.App. 4 Cir.6/4/03), 849 So.2d 782, this court summarized and reemphasized the law applicable to what was required to have a final appealable judgment. The Miller rationale *1099 was recently reaffirmed by the Supreme Court in Crescent City Physicians, Inc. v. Desse, XXXX-XXXX (La.10/1/04), 883 So.2d 963, as noted supra.
I am well aware of the various decisions of this court that have not adhered to the rule of Jackson and its progeny. For the most part, those panels have not followed the jurisprudence or the formality of the legislatively mandated procedure. One might argue that some judges feel that the failure of a party or the trial court to follow a procedure mandated by law or by jurisprudence is a forgivable offense; other judges feel duty bound to adhere to the procedure. The result has been chaotic for no one is sure what the law is because of the inconsistencies.
The majority now seeks to ignore precedent by abolishing a statutorily mandated procedure blessed by this unanimous court in Jackson, i.e., by saying that all a trial judge must do is state that a judgment is final and that no just reason for delay exists. The majority wants to ignore that part of the statute that requires a judge to give express reason why the judgment is final and no reason for delay exists. No extensive reasons are required by the statute, only that a reason be given. When a reason is given, this court then reviews the matter on an abuse of discretion standard.
The Louisiana Supreme Court has already effectively mandated a procedure for a flexible interpretation of article 1915 in an appropriate case. In Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), the Court indicated those types of cases wherein and appellate court errs by not exercising its supervisory jurisdiction. Those cases require that we adhere to the following three tests: (1) an appellate reversal will terminate the litigation; (2) there is no dispute of fact to be resolved, and (3) the trial court decision appears to be incorrect.
In sum, the law and the jurisprudential rule of the Fourth Circuit is very, very simple. Unless a case falls under the Herlitz exception, all that a judgment must say is substantially as follows: "This judgment is final and no just reason for delay of the appeal exists because [specific reason stated]."
It all comes this:
(1) A purely interlocutory judgment can only be reviewed by an application for a supervisory writ.
(2) A judgment falling within the specific types of judgments referenced in article 1915B that is final for essentially all purposes but lacks the trial court's statement that the judgment is final, no just reason exists for the delay of the appeal, and the reason for the need for an immediate appeal is reviewable only on an application for a supervisory writ; such a judgment cannot properly be converted to an appeal, but may be reviewed by the granting of a writ of certiorari, directing that the record in the trial court be delivered to the court of appeal, that briefs be filed, and, if the court desires, oral argument had.
(3) A final judgment that falls outside the ambit of the literal requirements of article 1915B requires no certification whatsoever by the trial judge and is immediately appealable.
Law does not authorize this court's haphazard procedure of converting writs to appeals or vice versa. This court's procedure of converting an appeal to a writ may, if a Herlitz situation is present, be *1100 warranted, but should be used very sparingly. But the law does not authorize the converting of any other appeal to a writ.
In Miller v. Tassin, supra, we said:
In Fraternal Order of Police v. City of New Orleans, XXXX-XXXX (La.11/8/02), 831 So.2d 897, the City of New Orleans filed a writ application after the court of appeal's dismissed its appeal because it was purportedly untimely. The decision the City sought to appeal was a partial summary judgment entered by the trial judge pursuant to La. C.C.P. art. 966(E) on 27 April 2000. On 5 June 2000, 39 days after the issuance of the judgment, the City filed a motion to certify the partial judgment as final for purposes of immediate appeal, pursuant to La. C.C.P. art. 1915. Although the trial judge signed an order certifying the partial judgment as final on 20 June 2000, the notice of signing of the order was not mailed to counsel for the City until 7 November 2000. The City filed its appeal the next day.
This court dismissed the appeal as untimely on the basis of the Supreme Court's previous interpretation of the pre-1999 amendment version of La. C.C.P. art. 1915 in Shell Pipeline Corp. v. Kennedy, XXXX-XXXX (La.10/16/01), 799 So.2d 475. Applying Shell Pipeline, the majority found that the appeal in this case was untimely because it was not filed with 67-days of the signing of judgment. The 67 day period was calculated by adding the seven-day delay for filing a motion for new trial, established by La. C.C.P. art. 1974, to the 60-day delay for filing a devolutive appeal, established by La. C.C.P. art. 2087.
The issues presented to the Court were: (1) whether a motion to certify a partial judgment as final for purposes of appeal must be filed within a specific time period after the trial court's issuance of the partial judgment; and (2) whether the delay for filing an appeal of a partial judgment begins on the day the motion to certify is signed by the trial judge or the day the notice of signing of the motion is mailed.
After analyzing the applicable statuses, the Supreme Court held that a motion to certify a partial summary judgment as final for purposes of immediate appeal does not have to be filed within a specific time period after the trial court's issuance of the judgment. Fraternal Order of Police, 2001 [2002]-1801 at p. 4, 831 So.2d at 899. In addition, the Court held that the delay for filing an appeal of a partial judgment begins on the day the notice of signing a motion to certify is mailed. Id. at p. 5, 831 So.2d at 900. Fraternal Order of Police has eviscerated Shell Pipeline.

We find, therefore, that a dismissal of this appeal without prejudice permits the appellant to obtain the required article 1915 designation and thereafter file an appeal in this court of that judgment.
Miller, 2002-2383 at pp. 10-12, 849 So.2d at 788-89.
Implicit in the Supreme Court's holding is not only that the statutory mandated procedure that the trial court must certify the judgment is final, that no just reason for a delay of the appeal is warranted, and that a specific reason for the immediate appeal be given, but also that the certification of the appeal as final must occur before an order of appeal mandated by La. C.C.P. art. 2121 is obtained. Thus, the certification of a judgment as final after an order of appeal is granted does not relate back to the original judgment. The party must obtain a new order of appeal after *1101 the trial court properly certifies an appeal as final, and the previous "appeal" dismissed without prejudice.
The First Circuit's decision in Motorola, Inc. v. Associated Indem. Corp., XXXX-XXXX (La.App. 1 Cir.10/22/03), 867 So.2d 723, does not follow the statute and inappropriately ignores the legislature's mandated procedure. It is, in my view, wrong. The First Circuit rule allows the various panels of the court of appeal to randomly decide which appeals the court will or will not hear. The parties and their counsel deserve to know the specific parameters by which an appellate court will review a partial judgment. A formal certification procedure reviewed on an abuse of discretion standard makes it clear to all that if one follows the statutory procedure, the appeal of a judgment under article 1915 will be handled as an appeal.
In the case at bar, the appeal should be dismissed without prejudice.
BAGNERIS, KIRBY, and GORBATY, JJ., dissents for the reasons assigned by Judge TOBIAS.
NOTES
[1] The Roundtrees did not sue Glynagin directly apparently because of the exclusivity of the worker's compensation remedy as between the Roundtrees and Glynagin, Mr. Roundtree's employer. Indeed, the worker's compensation carrier has filed an intervention in this action.
[2] Despite this court's statement in Roundtree that Scottsdale had been dismissed, Scottsdale's attorney certified in its writ application to the Louisiana Supreme Court seeking review of the Roundtree decision that it would "not abandon the defense of Hamp's." As noted, Scottsdale is also an appellant in the instant appeal.
[3] The New Orleans Defendants also filed a writ application seeking review of the trial court's denial of the New Orleans Defendants', Hamp's', and Scottsdale's cross motion for summary judgment as moot. This court denied that writ application, stating that "Relators' have an adequate remedy on appeal." Roundtree v. New Orleans Aviation Bd., XXXX-XXXX (La.App.5/3/04).
[4] The Legislature's 1999 amendment deleted the word "parties" contained in the 1997 version of Article 1915(B)(1) and thereby eliminated the confusion the inclusion of that word in that article had created with Article 1915(A). The amendment thus made clear that a judgment dismissing a party is a final judgment under Article 1915(A) and is appealable without the trial court's designation and determination required by Article 1915(B)(1).
[5] The 1997 version of Article 1915(B) reads as follows:

(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the actions as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to the rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
La. C.C.P. art. 1915(B)(1997 version)(emphasis supplied). Significantly, the certification requirement of La. C.C.P. art. 1915(B)(1)(i.e., the requirement that the judge make "an express determination that there is no just reason for delay") was initially enacted in 1997 and has not been changed.
[6] See La. C.C.P. art. 1841 (defining a final judgment as one that "determines the merits in whole or in part" and an interlocutory judgment as one that "does not determine the merits but only preliminary matters in the course of the action.")
[7] We note that the trial court's determination of finality is a legal determination, which appellate courts review de novo. LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/3/04), 869 So.2d 304, 307.
[8] See Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1220-21 (5th Cir.1990)(holding that the certification order need not "mechanically recite the words `no just reason for delay'" and characterizing the imposition of such a requirement as a "form-over-substance" approach).
[9] See Motorola, Inc. v. Associated Indem. Corp., XXXX-XXXX, p. 13 (La.App. 1 Cir. 10/22/03), 867 So.2d 723, 731 (referring to the "Fourth Circuit's no-reasons, no-jurisdiction rule").
[10] Ahner v. Hatfield, XXXX-XXXX, p. 3 (La.App. 4 Cir. 12/30/03), 865 So.2d 205, 207 (citing Motorola, Inc. v. Associated Indem. Corp., XXXX-XXXX, p. 1 (La.App. 1 Cir. 10/22/03), 867 So.2d 723, 737)(Kuhn, J., dissenting)); see also R.J. Messinger, Inc. v. Rosenblum, 2003-2209, p. 3 (La.App. 4 Cir. 6/02/04), 876 So.2d 898, 901, writ granted, XXXX-XXXX (La.10/15/04), 883 So.2d 1060 (dismissing an appeal solely based on the trial court's "fail[ure] to state why there was no reason for delay"); Jackson v. America's Favorite Chicken Co., 98-0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060; Nalty v. D.H. Holmes Co., 99-2826 (La.App. 4 Cir. 12/27/00), 775 So.2d 695, Lightell v. Phillip, 2000-2411, pp. 2-3 (La.App. 4 Cir. 9/19/01), 797 So.2d 120, 122, Dean v. United Medical Center, XXXX-XXXX (La.App. 4 Cir. 4/17/02), 816 So.2d 926, writ denied, XXXX-XXXX (La.9/13/02), 824 So.2d 1177; Thomas v. State, Dep't of Corrections, XXXX-XXXX, pp. 2-3 (La.App. 4 Cir. 7/7/04), 879 So.2d 893, 895.
[11] Montgomery v. Gosserand, 98-1966, p. 2 (La.App. 4 Cir. 12/23/98), 725 So.2d 92, 93 (reasoning that "[t]rial courts could do this with a rubber stamp"); Altvater v. LaBranche Properties Inc., XXXX-XXXX, p. 5 (La.App. 4 Cir. 3/31/04), 871 So.2d 1197, 1200 (characterizing the mere recitation of statutory language as an insufficient "boilerplate certification"); Messinger, 2003-2209 at p. 3, 876 So.2d at 900 (noting that such "mere conclusory statements" do not suffice").
[12] Both the First Circuit in Motorola and the commentators have noted the inconsistency in this court's jurisprudence on this issue. Motorola, XXXX-XXXX at p. 11, n. 10, 867 So.2d at 729 (citing Montgomery v. Lobman, Carnahan, Batt & Angelle, 98-2098, pp. 2-3 (La.App. 4 Cir. 2/17/99), 729 So.2d 1075, 1076); 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.3 (2004 Supp.)(same). In Lobman, Carnahan, this court found the trial court's handwritten notation on the record "it's appealable" was a sufficient to satisfy the certification requirement. See also Grant v. Boh Brothers Constr. Co., XXXX-XXXX (La.App. 4 Cir. 4/25/01), 785 So.2d 1041; and LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX (La.App. 4 Cir. 3/3/04), 869 So.2d 304. In Grant, this court rejected the appellant's assignment of error that the trial court improperly certified the appeal as final without giving "some reason" for immediate appeal as required by Jackson. In so doing, this court relied, in part, on the 1999 amendment to Article 1915(B), which deleted the word "parties." Although that amendment was technically inapplicable to the pre-January 1, 2000 judgment at issue in Grant, we reasoned that, as a result of that amendment, the trial court's "judgment was more squarely within the wording and applicable standard of La. C.C.P. art. 1915A." Grant, XXXX-XXXX at p. 6, 785 So.2d at 1045; see Motorola, XXXX-XXXX at p. 10, n. 9, 867 So.2d at 729 (characterizing Grant as an erroneous application of the present version of La. C.C.P. art. 1915 to a case filed before January 1, 2000).
[13] In LHO New Orleans LM, we cited the line of cases espousing the no-reasons, no-jurisdiction rule, yet departed from that rule.
[14] In all four of the other circuits, the presence or absence of reasons for certification currently is considered only in determining the standard of review of the trial court's certification decision. See Berman v. De Chazal, 98-81 (La.App. 5 Cir. 5/27/98), 717 So.2d 658. In Berman, the Fifth Circuit held that "the proper standard of review of such [certification] orders, when accompanied by reasons, is whether the trial judge abused his discretion, but when no reasons are given ... we will review the propriety of the certification de novo." Berman, 98-81 at p. 5, 717 So.2d at 661. Both the Second and the Third Circuit adopted the Fifth Circuit's Berman approach. In re Succession of Grimmett, 31-975, p. 7 (La.App. 2 Cir. 3/5/99), 738 So.2d 27, 31; Flatland Real Estate Co., LLC v. Dugas Constr., Inc., XXXX-XXXX, pp. 3-4 (La.App. 3 Cir. 5/9/01), 784 So.2d 867, 870. Similarly, the First Circuit has held that "[w]hen reasons are lacking, the appellate court is to conduct a de novo review to determine whether a partial judgment is final." Graves v. Garden State Life Ins., 2003-2208, 2003-2209, p. 1 (La.App. 1 Cir. 9/17/04), 887 So.2d 506, 507 (citing Motorola, XXXX-XXXX at p. 16, 867 So.2d at 732). See also 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 14.3 (2004 Supp.)(noting that "[t]here is some authority that a judge who designates a partial final judgment under Article 1915B as immediately appealable must give specific reasons for the designation, in the absence of which the certification will be reviewed de novo rather than under an `abuse of discretion' standard.")
[15] In re Succession of Grimmett, 31-975 at p. 7 (La.App. 2 Cir. 3/5/99), 738 So.2d 27, 31 (citing Montgomery v. Gosserand, 98-1966 (La.App. 4 Cir. 12/23/98), 725 So.2d 92 and rejecting Fourth Circuit's approach of dismissing an appeal when written reasons are not given); Motorola, XXXX-XXXX at p. 13, 867 So.2d at 731 (noting it declined to adopt the Fourth Circuit's "no reasons-no jurisdiction" rule).
[16] In Motorola, the First Circuit exhaustively traced and analyzed the legislative history of Article 1915(B)'s certification provision as well as the federal jurisprudence on this issue. We thus do not repeat that analysis in this case.
[17] In accordance with this court's established procedure this issue was submitted to the court en banc. The following judges voted to overrule the prior jurisprudence from this Circuit that held that a trial court is required to give explicit reasons for its certification: C.J. Armstrong, J. Jones, J. Murray, J. McKay, J. Love, J. Lombard, J. Belsome, and J. Cannizzaro. J. Bagneris, J. Kirby, J. Tobias, and J. Gorbaty dissented from that decision for the reasons assigned by J. Tobias. A copy of that dissent is attached to this opinion.
[18] See Mariast & Lemmon, supra (noting that "if the record establishes a basis for designation of the judgment as appealable, the appellate court should defer to the designation by the trial court, even if the trial judge did not articulate specific reasons for the designation.")
[19] Agricultural's policy defines both "asbestos abatement area" and "asbestos abatement operations" as follows:

"Asbestos abatement area" means the indoor or outdoor area which has been specifically isolated and self contained to prevent the spread of any contamination by `asbestos' while `asbestos abatement operations' are being performed within such area."
"Asbestos abatement operations" means "all operations to remove, encapsulate or enclose `asbestos' at a `scheduled project' and `designated premises.'"
[1] The case is presently docketed for oral argument before the Supreme Court on 19 January 2005.
[2] Presumptively, the Supreme Court is not acting upon the writ application pending its decision in R.J. Messinger v. Rosenblum, supra.
[3] Generally, a trial court has a good reason for certifying a partial judgment as final. One should not presume that a trial court has an inappropriate reason for certifying a judgment as final, in spite of the fact that trial judges are human.